85 328
111 380
85 328
114 113
85 328
s48NW 577
130 3556
85 328
136 3514
85 328
141 3 95
85 328
f144 3 79
85 328
148 4690
85 328
f150 3205
85 328
152 3358
85 328
155 3 643

WILLIAM C. TENNANT ET AL. v. THOMAS M. CROCKER, MAYOR OF THE CITY OF MT. CLEMENS.

*Municipal corporations—Resolutions of council—Taxation—Mandamus.*

1. Whether land is a public highway by user or not will not be decided in *mandamus* proceedings.

2. It is within the province of the Supreme Court to restrain public bodies and officers of the municipal divisions of the State from exceeding their jurisdiction, and to require them to perform such specific duties as the law imposes upon them *(Attorney General v. Board,* 64 Mich. 607; *Coll v. Board,* 83 Id. 367); and the writ has often been exercised to compel such bodies or officers to reverse their decisions *(People v. Supervisors,* 3 Mich. 475; *People v. Auditors,* 13 Id. 233).

3. The writ of *mandamus* is a discretionary one, and will not be issued in all cases, even where a *prima facie* right to relief is shown; but regard will be had to the exigency which calls for an exercise of such discretion, the nature and extent of the wrong or injury which would follow a refusal of the writ, and other facts which have a bearing upon the particular case.

So *held,* where the mayor of a city declared a resolution adopted by a majority vote when the charter required a concurring vote of two-thirds of all of the aldermen elect, and an application was made for a writ of *mandamus* to compel the

mayor to reverse his decision and to declare the resolution lost, which is denied on the ground that it appears from the face of the records that the resolution was not legally carried.

4. It is just as essential that every resolution or ordinance passed by the common council of a city incorporated under the general laws of this State (How. Stat. chap. 80) incurring a liability which must be met by taxation should be passed by a concurring vote of two-thirds of all the aldermen elect as that the annual appropriation bill provided for by said chapter (How. Stat. § 2704) should be so passed.

5. The common council of such a city, by a tie vote of the aldermen elect, and the casting vote of the mayor, who claimed the right to break the tie, assumed to pass a resolution authorizing the mayor and city clerk to enter into a contract for the purchase of a designated parcel of land at a stated price, to be used in widening a city street. And it is held that, by entering into said contract pursuant to such resolution, a liability would be at once incurred not provided for in said annual appropriation bill, and which the council are prohibited from incurring without a vote of the electors under How. Stat. § 2706, for which reason the action of the mayor in declaring the resolution carried cannot be upheld; and that, were the council not so prohibited, a concurring vote of two-thirds of all the aldermen elect would be required under section 2515.

6. The decision of the mayor did not involve the exercise of discretion, but was ministerial as a presiding officer of the council. If the resolution did not have the requisite two-thirds vote to support it, it was his duty to declare it lost.

*Mandamus.* Submitted January 7, 1891. Denied April 24, 1891.

Relators applied for *mandamus* to compel respondent to reverse his decision in declaring a resolution authorizing the purchase of certain land carried, and to declare it lost. The facts are stated in the opinion.

*Lungerhausen & Erskine,* for relators.

*T. M. Crocker,* for respondent, contended:

1. The petition prays that a writ of *mandamus* may issue to respondent, as mayor, etc., commanding him to declare said resolution illegal and lost, and to refrain from entering into any contract for the purchase of the land described in the res-

olution, and the order to show cause follows the petition; and it is insisted that neither of these orders can properly be made.

2. How. Stat. § 2510, provides that "the mayor shall be president of the council, and preside at the meetings thereof, but shall have no vote therein except in case of a tie, when he shall have the casting vote." Section 2512 provides that "the city clerk shall be clerk of the council, but shall have no vote therein. He shall keep a full record of all the proceedings of the council, and perform such other duties relating to his office as the council may direct." On the. occasion in question a resolution was offered, a yea and nay vote taken, resulting in a tie, which it became the duty of the mayor to break by his casting vote, which was done, and the clerk, in the discharge of his duty, recorded the proceedings so had. Whether right or wrong in a legal sense, it is now too late to change the action so taken. The common council is a deliberative body, and its action when taken cannot be modified or changed by *mandamus*. It is only when it refuses to act in the discharge of its duty that *mandamus* will lie; citing *Ex parte Black*, 1 Ohio St. 30; *City of Louisville v. McKean*, 18 B. Mon. 17; *Michigan City v. Roberts*, 34 Ind. 471; *County of St. Clair v. People*, 85 Ill. 398; *Com. v. Cochran*, 5 Binney, 103; *Hull v. Supervisors*, 19 Johns. 259; *United States v. Commissioner*, 5 Wall. 563; *Ex parte Burtis*, 103 U. S. 238; *Smith v. Mayor*, 1 Gray, 72, 74; High, Ex. Rem. §§ 323, 324, 325; *Howland v. Eldredge*, 43 N. Y. 457, 461; *People v. Supervisors*, 84 Ill. 303; *Seymour v. Ely*, 37 Conn. 103; *Supervisors v. People*, 110 Ill. 511; *Swan v. Gray*, 44 Miss. 393; *Ex parte Flippin*, 94 U. S. 348, 350; and the recent decision in *Coll v. Board*, 83 Mich. 367, in no way conflicts with this position. In that case the canvassers exceeded their powers (simply clerical) in acting judicially upon *ex parte* affidavits. Nor is the rule in conflict with *City of Detroit v. Circuit Judge*, 79 Mich. 384. And it is not too late to insist upon the defects in the prayer of the petition which render it void; citing *Olson v. Circuit Judge*, 49 Mich. 85, 88; *People v. Supervisors*, 14 Barb. 52, 55; *Bank v. Commissioners*, 10 Wend. 25; *People v. Ransom*, 2 N. Y. 490, 492.

CHAMPLIN, C. J. This is an application for a *mandamus* to compel the mayor of the city of Mt. Clemens, as presiding officer of the common council, to reverse his decision in declaring a certain resolution carried, and to declare it lost.

The city of Mt. Clemens is organized under chapter '80,

tit. 16, How. Stat., providing for the incorporation of cities. That act provides that—

"The legislative authority of cities incorporated under this act shall be vested in a council, consisting of the mayor, two aldermen elected from each ward, the aldermen at large, if any are elected in the city, and the city clerk." Section 2509.

"The mayor shall be president of the council, and preside at the meetings thereof, but shall have no vote therein except in case of a tie, when he shall have the casting vote." Section 2510.

"The city clerk shall be clerk of the council, but shall have no vote therein." Section 2512.

Each alderman is entitled to a vote in all the proceedings of the council. Section 2513.

"No office shall be created. or abolished, nor any tax or assessment be imposed, street, alley, or public ground be vacated, real estate or any interest therein sold or disposed of, or private property be taken for public use, unless by a concurring vote of two-thirds of all the aldermen elect; nor shall any vote of the council be reconsidered or rescinded at a special meeting, unless there be present as many aldermen as were present when such vote was taken. No money shall be appropriated except by ordinance or resolution of the council; nor shall any resolution be passed or adopted except by the vote of a majority of all the aldermen elected to office, except as herein otherwise provided." Section 2515.

The power of taxation is limited by the statute; and section 2695, subd. 3, authorizes a "general street fund," out of which the expenses of opening and widening streets are to be paid.

In the month of September in each year the council are required to cause estimates to be made of all the expenditures which will be required to be made from the several general funds of the city during the next fiscal year, and, among other things, for lands to be acquired. Section 2702. And in the same month the council are required to pass an ordinance to be termed the "Annual Appropriation Bill," in which they shall make provision

for and appropriate the several amounts required to defray the expenditures and liabilities of the corporation for the next fiscal year, payable from the several general funds, as estimated and determined upon, and specify in such ordinance the objects and purposes for which such appropriations are made, and the amount appropriated for each object and purpose, and to each of the general funds, and shall also designate in the said bill any local improvements which they may deem advisable to make during the next fiscal year, to be paid for in whole or in part by special assessment, and the estimated cost thereof; and these sums are to be certified to the clerk of the board of supervisors on or before the first Monday of October. And after the passage of the annual appropriation bill, no further sums shall be used, raised, or appropriated, nor shall any further liability be incurred, for any purpose, to be paid from any general fund, during the fiscal year for which the appropriation was made, unless the proposition to make the appropriation shall be sanctioned by a majority vote of the electors voting upon the proposition at the next annual city election. No improvement to be paid out of any general fund shall be contracted for or incurred in any fiscal year, unless in pursuance of an appropriation especially made therefor in the last preceding annual appropriation bill. "No public work, improvement, or expenditure shall be commenced, nor any contract therefor be let or made, except as herein otherwise provided, until a tax or assessment shall have been levied to pay the cost and expense thereof." Sections 2704–2707, 2709.

The city council of the city of Mt. Clemens consists of eight aldermen, elected in the four wards of the city. The mayor is the presiding officer. The relators are three of the aldermen of the city. They set forth in their petition that the Mt. Clemens Bath Company owns land

in the city, bounded north by Cass avenue and west by South Gratiot street; that they have made repeated unsuccessful attempts to sell to the city a strip of land on the east side of Gratiot street; that a portion of the strip is within the limits proper of Gratiot street,—an old turnpike running between Detroit and Fort Gratiot,— and has been used by the public as a highway for 30 years and upward, which facts are well known to the common council; that at a regular meeting of the council, at which all the aldermen and the mayor were present, the following resolution was offered:

"*Resolved*, that the mayor and city clerk be authorized to enter into a contract with the Mt. Clemens Bath Company for the purpose of purchasing a certain strip of land, being about 20 feet wide, for the sum of $1,000; said land fronting on the south side of Cass avenue, and running thence southerly, along the east side of Gratiot street, to a point, about 165 feet; said piece of land is wedge-shaped, and to be used for the purpose of widening Gratiot street where the same strikes Cass avenue."

That relators and Alderman Matthews, constituting one-half of the aldermen elect, voted against the resolution, the other four aldermen voting in favor of it, and the mayor, against the protest of relators and Matthews, declared that there was a tie, and that he had a casting vote, and thereupon attempted to cast a deciding vote in favor of said resolution, and declared it adopted.

They set up that such action of the mayor was illegal, and in contravention of sections 2672, 2673, How. Stat., which prohibit any improvement requiring the taking of private property being made except with the concurrence of two-thirds of all the officers elected to office, and of section 2515, which requires the same vote for taking private property for public use; and also that it violates another provision of section 2515, forbidding any resolu-

tion to be passed or adopted without a concurring vote of a majority of all the aldermen elected to office.

They further set up that the action of the mayor was illegal for the reason that no estimates were made, as required by section 2702, and no appropriation was made for such improvement, as required by sections 2704 and 2707, and it had not received the sanction of a majority of the electors, as provided for in section 2706; that no provision has been made for the purchase price of said land, nor has the fund out of which the same shall be paid been designated, and no tax or assessment has been levied to pay the cost and expense thereof, as required by section 2709; that no contract has yet been entered into by the mayor and clerk in pursuance of said resolution.

The answer of respondent does not deny any of the foregoing facts, except that relative to the old turnpike, and in respect to that respondent says that in the year 1818 Christian Clemens platted a parcel of ground which has at all times since been called and known as the old survey or plat of the village, now city, of Mt. Clemens; that on said plat was Cass street, and leading from Cass street southerly was another street, 50 feet in width, called "Court Street;" that in 1827, under an act of Congress, a turnpike was authorized to be laid out from Ft. Shelby to Ft. Gratiot, and soon after the passage of the act it was surveyed and constructed; that the survey ran across the plat of the village of Mt. Clemens, but was not perfected over and across it, nor did it in any way interfere with the same, but left it from a point on the opposite side of the intersection. Court street is only about 250 feet in length upon the plat made by Clemens. The turnpike was laid out 100 feet in width. The width of the turnpike as surveyed overlays the whole of Court street as platted at the north end. The side

lines bounding the turnpike are not parallel with the side lines of Court street, but the turnpike bears to the west, so that near the southerly line of Court street on the plat the east line of the turnpike crosses the east line of Court street, and, proceeding north along Court street, would inclose a wedge-shaped gore on the east side of Court street of about 20 feet wide at its base on Cass avenue, and the apex would be about 165 feet south from Cass avenue.

The answer of respondent further states that soon after the construction of said turnpike persons residing in said village commenced to build residences upon and along the said Court street and the said turnpike; that the building on the east side of Court street at its intersection with Cass street some 50 years ago was occupied as a hotel, and was built back from Court street about 8 feet, which was occupied as a sidewalk. The hotel was removed about 7 years ago, and the lot on which it stood and the adjoining lot on the south were leased to the Mt. Clemens Bath Company, who constructed a bath-house fronting on Cass avenue, and placed it about 21 feet east of the north-east corner of Court street, now called "South Gratiot Street," and Cass avenue. This point would be coincident with the north-east corner of the gore on Cass avenue.

On information and belief respondent answers and says that he is unable to find that any official action has been taken by the town of Clinton, the village of Mt. Clemens, or the city, to lay out and establish Court street as a highway, nor in any way to determine the side lines of said street and turnpike, which remained the same as when first surveyed, except as individuals have, as their taste or convenience dictated, placed their buildings and fences along the sides of said street; that in no instance have the public authorities accepted or adopted any por-

tion of the lots or block as a part of the said street; that, at all times the assessing officers have assessed the full lots without exception or reservation; that, after the removal of the hotel, a sidewalk was constructed upon the east side of South Gratiot street, and the same was placed over some portions of the ground formerly occupied by the hotel; but it was so placed without official action by the council, and the representatives of the bath company protested against its being so placed upon the premises claimed by them, as respondent is informed and believes. The answer then sets up the proceedings of the council leading up to and including the passage of the resolution in question.

We cannot decide in this proceeding whether the strip of ground described in the resolution is a public highway by user or not. The remedy is not appropriate to that purpose.

As the petition alleges that the attempt of the aldermen, acting with the mayor, was and is to purchase the land, and that their action in that regard was illegal, we shall address ourselves to a consideration of those objections which are based upon the illegality of such action.

We are of the opinion that the several provisions of the charter above quoted are mandatory. Article 15, § 13, of the Constitution provides:

"The Legislature shall provide for the incorporation and organization of cities and villages, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."

The action of the council complained of was the contracting of a debt, which the statute prohibits except in the manner and under circumstances pointed out in the statute. It is not denied, and therefore it stands confessed, that the action of the council, if consummated by entering into the contract authorized by the resolution,

would be in violation of the charter provisions; and therefore the passage of such resolution was unauthorized.

It is contended on behalf of the respondent that the—

"Resolution is simply an appointment by the council (instead of by the mayor) of a committee to *negotiate* for the purchase of the land desired to be used for street purposes at a price not exceeding $1,000."

I quote further from the brief of counsel for respondent:

"The resolution does not go beyond this. It does not authorize the drawing of orders, nor the use of money in payment. Whether the owners of land deemed desirable for widening the street will take less than $1,500 has not yet been ascertained, nor is it so averred in the petition. No minds have yet met upon the price. Under these circumstances it was not of any importance whether an appropriation had previously been made for this particular purpose or not. When a purchase price is finally agreed upon the council can in due time provide for the payment of such purchase price by proper action. The statute does not inhibit negotiation for purchase before an appropriation has been made. It will become the duty of the council to provide for payment after the price has been agreed upon."

It must be observed that the language of the resolution does not import a mere authority to negotiate for a purchase, but in plain language authorizes a purchase at a fixed and definite price. When, in pursuance of such authority, the mayor and clerk enter into the contract a liability is at once incurred, which has not been provided for in the annual appropriation bill, and is expressly prohibited by section 2706, above cited; and for this reason the action of the mayor in declaring the resolution carried cannot be upheld.

The city of Mt. Clemens has no other way of discharging its obligations of the kind in controversy here, requiring the payment of money, except by taxation. All

contracts incurring liability for the payment of money constitute the basis for which taxes may be levied, and are in effect an appropriation of so much money to be raised by taxes for that purpose. These are embodied in the annual appropriation bill, which authorizes and orders the taxes to be raised for the liabilities incurred. It is just as essential that every resolution or ordinance incurring a liability which must be met by taxation should be passed by a two-thirds vote of all the aldermen elect as it is that the appropriation bill should be passed by such vote. If a less vote than two-thirds can incur a legal liability, and a tax to meet such liability cannot be imposed by a less vote than two-thirds, there might be liabilities to the full limit of taxation incurred without the means to impose taxes to pay the same. The city as a corporation would be liable to suit, and judgments recovered would have to be assessed, and thus the restrictions and safeguards which the statute provides requiring the assent of two-thirds of all the aldermen elect in order to impose a tax would be abrogated. We think that not only was the council prohibited from incurring the liability under section 2706, but that, if they had the power, it required a concurring vote of two-thirds of all the aldermen elect to do so, under section 2515.

It is further contended by respondent that *mandamus* will not lie in such a case as this. Several authorities are cited to the effect that when a question has been passed upon the writ will not be used for the purpose of correcting a decision, especially where the decision was made in the exercise of a discretion of the body or officer making the same. The decision of the mayor in the case under consideration did not involve the exercise of discretion, but was ministerial as a presiding officer of the council. If the resolution did not have the requisite two-

thirds vote to support it, it was his duty to declare it lost. Jurisdiction is given by the Constitution to this Court to issue the writ of *mandamus,* and it is within the province of courts to restrain public bodies and officers of the municipal divisions of the State from exceeding their jurisdiction, and to require them to perform such specific duties as the law imposes upon them. *Attorney General v. Board,* 64 Mich. 607; *Coll v. Board,* 83 Id. 367. And the writ has often been exercised to compel such bodies or officers to reverse their decisions. *People v. Supervisors,* 3 Mich. 475; *People v. Auditors,* 13 Id. 233.

The writ, however, is a discretionary one, and will not be awarded in all cases, even where a *prima facie* right to relief is shown. We must have regard to the exigency which calls upon us to exercise our discretion, the nature and extent of the wrong or injury which would follow its refusal, and other facts which have a bearing upon the particular case.

It now appears from the petition and answer that the action of the mayor in declaring the resolution adopted was illegal, and that in fact it appears upon the face of the records that it was not carried. It follows that no valid contract could be entered into under such resolution, for want of authority to enter into a contract on the part of the mayor and clerk. All persons dealing with a municipal corporation are bound to take notice of the limitations imposed by law upon their power to contract, and hence there can be no danger of any liability arising from entering into a contract with a third person under the assumed authority. It follows, also, that no injury can arise to the city on account of the action complained of. The performance of the act prayed for would be merely perfunctory, adding nothing to the legal *status* of the record as it exists now, and consequently

the writ should not be issued to compel the performance of an idle ceremony.

For these reasons the writ will be denied, without costs to either party.

The other Justices concurred.