BAKER v. BOARD OF STATE CANVASSERS.

MANDAMUS—WHEN DENIED.

> *Mandamus* will not issue to compel the board of state canvassers, which refuses to credit a candidate at a general election with the votes cast for him in certain counties because his name is spelled incorrectly in the returns, to obtain corrected returns, and canvass the votes in accordance therewith, if the general result is such that the action would be an idle ceremony affecting no material rights or interests.

*Mandamus* by Fred A. Baker to compel the board of state canvassers to obtain corrected returns of the votes cast in certain counties at a general election, and to canvass and record the result in accordance with the returns as corrected. Submitted December 18, 1896. Denied December 24, 1896.

*Fred A. Baker, in pro. per.*

*Fred A. Maynard,* Attorney General, for respondent.

MOORE, J. The petition of the relator represents that he is chairman of the Democratic state central committee, and for that reason is interested in having the votes cast for the state officers at the last election correctly canvassed, to the end that, in future elections, the ticket of the said Democratic party may have its proper place on all official ballots in the several counties of the State. The petition then states the names of the candidates of said party for the offices of governor, commissioner of the

state land office, superintendent of public instruction, and member of, the board of education. The petition then avers that the respondent refused to give Charles R. Sligh credit for 2,627 votes cast for him in the county of Huron, and for 393 votes cast for him in the county of Ontonagon, because, in the returns from said counties, his surname was spelled "Sleigh;" and they refuse to give him credit for 1,158 votes cast for him in the county of Delta, because his surname was spelled "Slig." The petition also makes similar representations as to the other candidates therein named. The petition avers that it was the duty of the board of state canvassers to obtain from the county clerks correct returns, and to credit the votes therein mentioned to the candidates entitled to them. The prayer is for a writ of *mandamus* to compel the board of canvassers to obtain corrected returns, and to make the proper credits.

The answer of the respondent shows that, if all the votes were credited as prayed for by relator, it would not affect the election of any of the candidates mentioned by relator, or the relative position of the ticket of the party represented by him on the official ballot at the next general election. The answer shows that, in the case of governor, there are but 4,178 votes in dispute. Crediting all of these to Mr. Sligh, Mr. Pingree would still have a plurality of 79,231 votes. After making the credits as prayed, Mr. French, candidate for commissioner of the land office, would have upwards of 57,000 plurality. Mr. Hammond, candidate for superintendent of public instruction, would have a plurality of more than 57,000. This would also be true of Mr. Simmons, candidate for member of the state board of education. Nor would the result be changed so as to affect the relative position on the ticket at the next general election of the various party candidates. It may be said, also, that section 14 of Act No. 202, Pub. Acts 1893, provides that the board of election commissioners in each county shall be clothed with certain duties, and that the "ticket of the party having

the greatest number of votes within the county at the
last preceding general election shall be placed first on the
ballot, the position of other tickets to be governed rela-
tively by the same rule." To determine the number of
votes cast for the various parties, the election commission-
ers go to the county clerk's office, and not to the office of
the state board of canvassers; and there is nothing in the
record to show but what the votes are properly tabulated
in the offices of the clerks of the counties mentioned in
relator's petition.

The writ of *mandamus* is a discretionary writ. In the
case of *Pistorius* v. *Stempel*, 81 Mich. 133, it was held
that, though one has such a special interest as entitles
him to apply for the writ, unless he makes a showing that
his rights or interests are prejudiced or affected, the writ
will not issue. In *Tennant* v. *Crocker*, 85 Mich. 328, it
was held, in an opinion written by Justice CHAMPLIN,
"that the writ is a discretionary one, and will not be
awarded in all cases, even where a *prima facie* right to
relief is shown; that regard must be had to the exigency
which calls for the exercise of the discretion, the nature
and extent of the wrong or injury which would follow its
refusal, and other facts bearing upon the particular
case;" and that the writ should not be issued to compel
the performance of an idle ceremony. We do not think
any such exigency has been shown as to require the issu-
ing of the writ.

The writ will be denied, without costs to either party.

The other Justices concurred.