STATE OF NORTH DAKOTA EX REL L. M. DAVIS V. C. C. WILLIS, A. J. DeLANCE, RALPH ABBOTT AND J. W. FABRICK, AS THE COUNTY CANVASSING BOARD OF WARD COUNTY, NORTH DAKOTA.

Opinion filed January 18, 1910.

**Mandamus — Parties — Public Interest.**

1. A petition in a mandamus proceeding brought in the name of the state, on the relation of a party who does not profess to act in an official capacity, which shows on its face that the relator is seeking to vindicate, not a private right of concern only to himself, but a matter of public interest, in which all the electors and taxpayers of a county are concerned, and interested equally with him, may be properly made and presented to the court by any citizen of the locality affected.

**Mandamus — County Division — Laches.**

2. Where the result of the canvass of the vote, cast upon the proposition to divide a county and create from a portion thereof a new county, is announced on November 30, 1908, and a proceeding in mandamus, for the purpose of testing the accuracy and sufficiency of the certified statement produced and announced by the county board of canvassers, is commenced on January 22, 1909, and in the interval between these dates the only public act in any manner af-

fecting the new county is the appointment by the governor of county commissioners therefor, the laches and delay of the relator in the mandamus proceeding are not so gross and unreasonable that a court should refuse to consider his application upon the merits.

### Mandamus — Nature of Writ.

3. The writ of mandamus is not a mere writ of right, but a high, prerogative mandate that will, in the exercise of sound, judicial discretion, and on equitable principles, be issued only when called for by circumstances so exceptional that, if the extraordinary relief afforded by the writ is refused, a failure or miscarriage of justice will result. It will not be awarded in a proceeding involving only the public interest, even where a prima facie right to legal relief is shown, if it appears that it will serve no other purpose than to require an idle ceremony on the part of public officers, or will produce a barren and fruitless result, not affecting the public interest beneficially or otherwise.

### Mandamus — Judgment — Res Adjudicate.

4. A citizen of a county, acting as relator in a matter affecting only the public right, and applying in the name of the state for a writ of mandamus, will not be regarded as acting in any personal sense whatever, but only as a representative of the public interest, and is concluded with reference to any fact adjudged or admitted, or which might have been adjudged, in a former judicial proceeding in which the same public interest was plaintiff or defendant, and is bound by the facts that are or might have been adjudged in the former proceeding as fully as though he were named as a party thereto.

A judgment, duly entered in an action or proceeding of which the court has jurisdiction against a county or its legal representative, in a matter of general interest to all its citizens, is binding upon the latter, though they are not nominally parties to the suit. To hold that each citizen of the county, after a question is once adjudicated on the application of a public representative, is still at liberty to commence an action in court and relitigate the question in his own name would be in effect to nullify the judgment, and to ignore the rule that the well-being of society requires that matters once judicially settled shall not be again repeatedly brought into litigation.

Appellant, as a citizen of Ward county, applies for a write of mandamus requiring the county board of canvassers to reconvene and prepare a new abstract of its canvass of the vote cast at an election, held upon a proposition legally submitted to divide Ward county and create from a part thereof the new county of Mountraille. As ground for such application he shows that said board, on its first canvass of the vote cast, considered and entered in its certified abstract, certain results taken from tally sheets and other memoranda not entitled to official recognition.

Held, that, unless it can be said that the appellant states facts showing that if the writ issue and the county board of canvassers

produce a new abstract, it will show an aggregate result the reverse of that formerly produced, appellant does not present a case that will warrant the exercise of the extraordinary remedy of mandamus. If, however, it can be said that the petition shows that the result produced by a recanvass of the vote will be the contrary of that shown by the first canvass, appellant is concluded, and will not be heard to question such result, as in a proceeding in certiorari, formerly adjudicated and necessarily involving the same fact, the representative of the public interest admitted that the result shown by the abstract of the board of county canvassers upon its first canvass was the true result of the vote, and the court, in passing upon such fact, so determined and adjudged.

Appeal from District Court, Ward county; *Templeton,* J.

Application by the State of North Dakota on the relation of L. M. Davis, for a writ of mandamus requiring respondents, as the county board of canvassers of Ward county, to reconvene and prepare a new abstract of the vote cast at an election held upon a proposition to divide Ward county and create from a portion thereof the new county of Mountraille. From an order of the district court denying the writ, relator appeals.

Affirmed.

*L. W. Gammons* and *John E. Greene,* for appellant.

Where canvassers have declared a result, they may be compelled by mandamus to reconvene and declare a correct result where they have neglected their duty in the first canvass. 15 Cyc. 384 and note 91; Smith v. Lawrence, 49 N. W. 7; Rich v. Board, 59 N. W. 181; Belknap v. Board, 54 N. W. 376, 696.

Where the right or duty affects the state in the sovereign capacity apart from the people at large, action is by the proper public officer; but if the public apart from the state is affected, any citizen may sue out the writ of mandamus. 26 Cyc. 401-403; State v. Carey, 2 N. D. 36, 49 N. W. 164; State v. Langlie, 5 N. D. 594, 67 N. W. 958; State v. Lien, 68 N. W. 748; State v. Matley, 24 N. W. 200. The person sought to be bound by res adjudicata, must have appeared in both actions in the same capacity. 24 Am. & Eng. Enc. Law, 734, 714.

To constitute laches in mandamus the delay must be gross and unreasonable. 26 Cyc. 393, 394 and 395; Barker v. Montana Gold Mining Company, 89 Pac. 66.

Unsettled state of law on account of conflicting decisions and pending litigation may excuse delay. People v. Lantry, 62 N. Y.

Supp. 630; People v. Scannell, 59 N. Y. Supp. 679; Duke v. Turner, 204 U. S. 623.

*Geo. A. Bangs,* for respondent.

Where the duty is public in its nature, mandamus issues only at the instance of duly constituted authorities; a private citizen can apply only when he has a special interest not pertaining to other citizens. Dean vs. Dimmick, 18 N. D. 397, 122 N. W. 245; Smith v. Mayor, 81 Mich. 123, 45 N. W. 964; Thomas v. Hamilton, 101 Mich. 387, 59 N. W. 658; State v. Inhabitants, etc., 25 Me. 297; Mitchell v. Boardmen, 79 Me. 469, 10 Atl. 452; Weeks v. Smith, 81 Me. 538, 18 Atl. 325; State v. Co., 68 S. C. 540, 47 S .E. 979 at 983; Chapman v. People, 9 Colo. App. 268, 48 Pac. 153; Linden v. Board, 45 Cal. 6; Marina v. Graham, 67 Cal. 130, 7 Pac. 442; Colnon v. Orr, 71 Cal. 43, 11 Pac. 814; Ashe v. Supervisors, 71 Cal. 236, 16 Pac. 783; People v. Budd, 47 Pac. 594; Fritz v. Charles, 145 Cal. 512, 78 Pac. 1057; Doolittle v. Supervisors, 18 N. Y. 155; Bamford v· Hollinshead, 47 N. J. L. 439; Atwood v. Patre, 56 Conn. 80, 14 Atl. 85.

Relator, aware of his rights, should act promptly, prevent others acting to their detriment, relying upon the result of the proceedings. Rice v. Board, 50 Kan. 149 at 154, 32 Pac. 134; People v. Judge, 41 Mich. 31; Eggleson v. Judge, 15 N. W. 55; People v. Chapin, 104 N. Y. 96 at 102, 10 N. E. 141; State v. Supervisors, 38 Wis. 554; In re Depeaux's Estate, 50 Pac. 682; McConoughey v. Judge, 57 Pac. 81; Gray v. Judge, 14 N. W. 666; State v. Com'rs, 9 S. E. 692 at 694; State v. Court, 46 Pac. 232; Moore v. Ass'n, 47 S. W. 716; State v. Nichols, 73 Pac. 50; State v. Gibson, 86 S. W. 177 at 181; State v. Judge, 91 N. W. 175.

Court will not compel a board to do what in substance it has already done. Wiedwald vs. Dodson, 30 Pac. 580; State v. Com'rs, 26 Kan. 419; State v. Beck, 57 Pac. 935; People v. Board, 137 N. Y. 201, 33 N. E. 145; People v. Board, 129 N. Y. 360, 29 N. E. 345; State v. Wittemore, 9 N. W. 93; Highs Ex. Leg. Rem. Sec. 40, 14-26; Baker v. Board, 69 N. W. 656; Rice v. Board, 32 Pac. 134; Shellabarger v. Williamson, 32 Pac· 132; State v. U. S. Ex. Co., 104 N. W. 556.

Matters determined in action by the attorney general to fix the status of Mountraille county are res adjudicata. Freeman on Judgments, 178; 23 Cyc. 1406; Sauls v. Freeman, 4 So. 525, 12 A. S. R. 190; Nichols v. MacLean, 101 N. Y. 526, 5 N. E. 347; Giblin v.

North Wisconsin Lumber Co., 111 N. W. 499; Kaufer v. Ford, 110 N. W. 364; Locke v. Comm., 69 S. W. 763; Lyman v. Faris, 5 N. W. 621; Cannon v. Nelson, 48 N. W. 1033; Silver v. Traverse, 47 N. W. 888, 11 L. R. A. 804; McConkie v. Ramley, 93 N. W. 505; City v. Ellis, 61 N. W. 886; Elson v. Comstock, 150 Ill. 303, 37 N. E. 207; Ashton v. City, 133 N. Y. 187-192, 30 N. E. 965, 28 A. S. R. 619; Harman v. Auditor, 123 Ill. 122, 13 N. E. 161; Sabin v. Sherman, 28 Kan. 205, Terry v. Town, 35 Conn. 526; S. P. R. Co. v. U. S., 18 Sup. Ct. Rep. 18.

A judgment against a county in a matter of general interest, binds all the people of the county. 2 Van Fleet's Former Adjudication, pages 1150 and 1157; McEntire v. Williamson, 65 Pac. 244; Shanahan v. So. Omaha, 89 N. W. 285; Holt Co. v. Co., 80 Fed. 686; Harshman v. Knox Co., 122 U. S. 306, 30 L. Ed. 1152; Scotland Co. v. Hill, 112 U. S. 183, 28 L. Ed. 692; Labette Co. Commr's. v. U. S., 112 U. S. 217, 28 L. Ed. 698; State v. Langlie, 5 N. D. 594, 67 N. W. 958, 32 L. R. A. 723.

ELLSWORTH, J. This appeal is taken from an order of the district court of the Eighth judicial district denying the application of appellant for a writ of mandamus, directed to respondents as the county canvassing board of Ward county. Appellant alleges, in his petition to the district court for the writ of mandamus, that he is an elector and taxpayer of the county of Ward; that on the 3d day of November, 1908, a general election was held within said count of Ward, and at said election there was submitted to the electors of said county a proposition to change the boundaries of Ward county, and to create from a portion of the territory thereof, a new county, to be known as Mountraille, and that such proposition was voted upon at said election; that the respondents, as the duly organized county canvassing board for Ward county, during the month of November, 1908, convened, and, after organizing as required by law, proceeded to make a canvass of the votes cast at said general election upon the proposition to create the county of Mountraille, and prepared and certified as the result of such election an abstract showing that there were 4,207 votes cast in favor of said proposition and 4,024 votes cast against it. The petition further alleges that the respondents, while acting as such county canvassing board, in making an abstract of the votes cast in Ward county upon the proposition to create said county of Mountraille, failed to perform the duty required of

them by law, and failed to make a true, full and complete abstract of the votes cast at said election upon the said proposition, but, on the contrary, made an incomplete, incorrect, and false abstract of said votes, and included in said abstract the number of 1,449 votes as having been cast at said election in favor of said proposition, of which said votes there was and is no certified return of election precinct inspectors or judges. Here follows a list of 52 precincts of Ward county, from each of which it is alleged there has been included in said abstract a certain number of votes as cast at said election, both in favor of and against the proposition to create the county of Mountraille. That the votes against the said proposition unlawfully included in the said abstract aggregate in number 858. That in each and all of said precincts the certified returns of the election officers do not disclose that any votes whatever were cast on the proposition to divide Ward county, and that there is not, and never has been, on file in the office of the county auditor of said county any certificate, or any information of any character, that may be lawfully considered to show that any votes were cast in many of said precincts, either in favor of or against said proposition. That appellant as relator in such petition is informed and believes that the respondents in preparing said abstract consulted certain tally sheets and other unofficial memoranda, and, wholly from such data unrecognized by law, determined and included in their abstract of votes, as having been cast in favor of said proposition, a total of 1,449 votes, and against said proposition a total of 858 votes. That the pretended votes alleged to be unlawfully and wrongfully included in said pretended abstract of votes are sufficient in number to change the result of the said election, as shown by said abstract so prepared, and that a true, complete, and lawful canvass of the votes cast at said election for and against said proposition will disclose that it is defeated by a large majority, and that said board should so make its abstract to show, and should so certify. Appellant then alleges that by reason of the foregoing facts the respondents, as the county canvassing board of Ward county, have not completed their duties as specified by law, and have not made a lawful canvass of the votes cast at said election on said proposition, and have not presented a true and complete abstract of the votes so cast, and prays for a writ of mandamus requiring the said board of canvassers to re-

assemble and reconvene for the canvass of the election returns of said county, on the proposition to create the county of Mountraille, and that in making such canvass they take into consideration only certified statements or returns duly signed by inspectors or judges of election in each of the several precincts, and refrain from reference to or consideration of any unofficial memoranda, tally sheets, or uncertified statements of any kind with respect to any votes cast, whether in favor of or against said proposition, and upon the completion of such canvass to make a properly certified abstract thereof as required by law.

Upon the presentation of this petition to the district court an alternative writ of mandamus was issued and served upon the respondents, who made answer, admitting all allegations of appellants' petition with reference to their appointment and organization as the county canvassing board of Ward county and their convening as such board for the purpose of making, among other things, a canvass of the vote cast upon the proposition to create the new county of Mountraille. They further allege that they in all things fully complied, and sincerely attempted to comply, with each and all of the provisions of law governing the canvass of said votes and the making of an abstract thereof, and that they did in good faith honestly, and sincerely attempt to make a full, fair, honest, complete and accurate canvass and abstract of the votes; that in the regular election blanks furnished by the county auditor of Ward county to the various precincts for use by the officers at said election there was not contained any prepared blank form of certificate to a statement of the vote upon the various propositions for the division of the county of Ward, including that to create the county of Mountraille, and that, as a consequence, in the returns from the different election precincts there was no regular form of certificate of the vote cast in favor of or against such proposition made out and transmitted by the precinct officers; that the officers in some of the precincts interlined the result of such vote in the regular form of certificate furnished them with the ordinary election return blanks; that the officers in other precincts made out statements or certificates of the votes cast, upon separate sheets of paper which were attached, either by fastening with pins or otherwise, to the regular certificates and pollbooks, and returned in that way; that the officers, in a few of the precincts, because of the failure to furnish to them a form of certificate of

the statement of the vote on said proposition, neglected to furnish any statement whatever, and in such case the canvassing board ascertained the result of the vote upon this proposition in such precinct by consulting the tally sheets which came with the regular returns; that in each case in which a statement and certificate was furnished by the precinct officers, such statement was used by respondents as a basis for the entries made by said board in their official abstract, and that in no instance was there any information used as a basis of the canvass of such vote by said board other than the statements interlined into the regular certificates, special certificates made out upon separate sheets by the election officers, or the tally sheets prepared by such officers at said election; that great care was exercised by respondents in arriving at the true result of said vote as cast at said election, and in their best judgment and opinion the result of the canvass as heretofore announced by them on or about November 30, 1908, is a true, correct, full and complete canvass of the votes upon the proposition to create said new county of Mountraille, and that there were actually cast in favor of such proposition 4,207 votes, and against the same 4,024 votes; that the canvass of the votes of Ward county, including the canvass upon the proposition to create the county of Mountraille, was completed on or prior to the 30th day of November, 1908, and that immediately thereafter respondents, as such canvassing board, made out their abstract and return, as required by law, to the Secretary of State of the state of North Dakota, in which abstract there was included a statement of the votes cast for and against the proposition to create Mountraille county, which abstract was immediately transmitted to the Secretary of State in order that the said Secretary of State might make his certificate as required by law to the governor of the state, and the county of Mountraille be organized in accordance with the provisions of law.

As a further defense to the cause of action alleged in appellant's petition, the respondents then show that, after the canvass of the vote and the transmission of said certified abstract to the Secretary of State, T. F. McCue, then Attorney General of the state of North Dakota, made application to the Supreme Court of the state of North Dakota for a writ of certiorari, in which application was stated the same facts hereinbefore set out with reference to the general election in Ward county, the submission to the electors of said county, at said election, of the proposition to create the

county of Mountraille, and two other counties, to be known as Burke and Renville, within the limits of said Ward county; that thereafter the county convassing board of said Ward county, after having canvassed said votes, found and certified that there were cast at said election, in favor of the proposed county of Mountraille, 4,207 votes, and against said proposition, 4,024 votes; that pursuant to the requirements of the state law the county auditor of Ward county had duly certified to the secretary of state the result of such election upon the proposition to create the county of Mountraille, showing that a majority of the vote cast was in favor of such proposition, and that the secretary of state, acting pursuant to the statute in such case provided, was about to notify the governor of said state of the result of said election upon said propotition, to the end that the governor might proceed to appoint county commissioners for such county and to complete the organization of the same; that said certificate and return of the auditor of Ward county to the secretary of state was erroneous and void, "for the reason that, while such proposition (to create the county of Mountraille) received a majority of all the votes cast at said general election upon that particular proposition, such proposition did not receive, and was not adopted by, a majority of all the legal votes cast in said Ward county at said election, as contemplated and required by section 168 of the Constitution of the state of North Dakota;" that pursuant to this application of the Attorney General a writ of certiorari was issued from the Supreme Court of the state, requiring the county auditor of Ward county and the secretary of state of North Dakota to return and certify to the Supreme Court all proceedings, certificates, and returns in the custody and under the control of either, with respect to the proposition to create said county of Mountraille, together with the legal number of votes cast at said general election for state and county officers within said Ward county, in order that the said court might cause to be done thereon what is right, and according to law ought to be done; that thereupon the secretary of state made answer, to which he attached the certificate of the county auditor of Ward county, showing the results of the election held in said county of Ward on the date aforesaid, showing the results of such election with respect to the county and state officers voted for at said election, and the vote upon the several propositions for the division of Ward county, including that providing for the creation

of the new county of Mountraille, and by his answer alleged that
it was his purpose and intention, pursuant to said auditor's certi-
ficate of the result of said election, to notify the governor of the
state of North Dakota that the proposition to change the boun-
dary lines of Ward county, and to establish therein the county of
Mountraille, had received the vote requisite to the creation of said
new county, that the governor of North Dakota might act there-
upon by the appointment of commissioners for said county of
Mountraille, as contemplated by law; that thereupon said proceed-
ing for a writ of certiorari was heard by the Supreme Court on the
29th day of December, 1908, upon the merits, and that thereafter,
on the 14th day of January, 1909, the Supreme Court of the state
of North Dakota did render its decision and opinion, by which the
application of the attorney general for a writ of certiorari was de-
nied, and the temporary writ issued in the proceeding quashed
and annulled; (here is quoted at length the opinion of the Supreme
Court of North Dakota in State v. Blaisdell, 18 N. D. 31, 119 N.
W. 360); that upon the filing of the decision of the Supreme Court
of North Dakota the secretary of state did certify the result of
such election to the governor of the state of North Dakota, and
that thereupon the governor did appoint county commissioners for
said county of Mountraille, and that said commissioners had, prior
to the date of said application for mandamus, qualified, met, or-
ganized, and appointed several of the officers of the said new
county of Mountraille and that by reason of such facts the said
county is now completely organized and existing as a county of the
state of North Dakota; that such organization is based upon the
determination of the issue in said certiorari proceedings, which
proceedings were based upon the necessary assumption that there
had been a full, accurate, legal and complete canvass of the vote
cast upon the proposition to create the said county of Mountraille,
by the canvassing board of the county of Ward; that, by reason of
the facts alleged, appellant as such relator is guilty of laches, and
the matters alleged in his application for the writ of mandamus as
a ground for the granting of such writ are res adjudicata, and that
appellant as relator in said proceeding is estopped to allege, and
should not be heard now to set up, facts which bring in question
the result of the vote cast upon such proposition.

Upon the presentation of this answer by respondents, appellant
demurred thereto, and all questions arising upon the application

were heard before the district court on or about the 24th day of February, 1909. On such hearing the respondents contested the right of appellant to a writ of mandamus upon four points, as follows: (1) That the relator, Davis, has not shown such interest or right to move in a matter of this character as will authorize him to maintain this application for a writ of mandamus; (2) that appellant by his laches and delay in waiting from November 30, 1908, until January 22, 1909, with full knowledge of the manner and result of respondents' canvass of said vote, was now estopped, and should not be heard to question the correctness or sufficiency of such canvass; (3) that mandamus is not a writ of right, and that the court, in the exercise of sound judicial discretion, and in the promotion of equitable principles, should not issue the writ to require the recanvass by respondents of the vote cast at said election, when it did not appear that such recanvass, if legally conducted, would produce a different result; and (4) that by the decision and judgment of the Supreme Court in the certiorari proceedings instituted by the attorney general of the state, the fact that the majority of the vote cast upon the proposition to create the new county of Mountraille at said election was in favor of said proposition. is res adjudicata, and that relator is estopped, and should not be heard to again bring up for judicial determination the same fact in this proceeding. The district court overruled the first and second points of objection presented by respondents, and sustained their contentions upon the third and fourth points; and thereupon entered an order denying the writ of mandamus. Upon appeal to this court respondents make the same contentions, and present the same points of defense, relied upon by them in the district court. We will therefore consider these points in the order in which they are mentioned.

The petition of appellant, as relator, contains no express allegation that the subject-matter is of public concern, or that he is moving in the interest of the large class of citizens constituting the resident electors and taxpayers of Ward county; but his proceeding is entitled in the name of the "State of North Dakota," and on its face discloses that he is seeking to vindicate, not a private right of concern only to himself, but a matter of public interest, in which all electors and taxpayers of Ward county are concerned and interested equally with him. In these particulars his proceeding

is to be distinguished from that in the case of Dean v. Dimmick, 18 N. D. 397; 122 N. W. 245, in which the relator does not profess to move in the name of the state. Under a rule of practice, first announced by this court in 1891, and subsequently adhered to, "where the controversy does not concern the state, as such, but does concern a large class of citizens in common, as, for example, the citizens and taxpayers of a particular county, town, city or district, the required affidavit (for mandamus) may properly be made by any citizen of the locality affected." State v. Carey, 2 N. D. 36, 49 N. W. 164; State v. Langlie, 5 N. D. 594, 67 N. W. 958, 32 L. R. A. 723. We, therefore, hold upon this point that a sufficient interest to maintain the application, if meritorious in other respects, is shown by appellant's allegation that he is an elector and taxpayer of the county of Ward.

While the delay of appellant in waiting from November 30, 1908, to January 22, 1909, before commencing this proceeding is not explained in a manner than is entirely satisfactory, it appears that the only matter of public interest that had intervened during that interval was the appointment by the governor of North Dakota of county commissioners for the new county. Under the circumstances, therefore, we are of the opinion that, if appellant was, upon the merits of his application, entitled to a writ of mandamus, its issuance at the time of his application would not have produced such confusion in the pubic service as to warrant the district court in refusing to entertain the application on the ground that his laches and delay were gross and unreasonable.

From an examination of the moving papers and the admissions of the answer, it is apparent that respondents, as the county canvassing board of Ward county, exceeded their duty in entering upon their abstract of the votes cast in said county upon the proposition to create the new county of Mountraille, a record of votes from certain precincts, of which the precinct officers had made no certified statement or return. The duties of a canvassing board are purely ministerial, and in performing them they are limited to a consideration of the certified statements returned by the precinct election officers. State v. McKenzie, 10 N. D. 132, 86 N. W. 231. It is admitted by respondents that, in the case of at least a few of the precincts, they took the results entered on their abstract from tally sheets, or other unofficial memoranda which should not have been considered. Does it follow from this that

respondents will be required by mandamus to reconvene and prepare an abstract upon which will be shown only the votes of which they have before them evidence that can be legally recognized, in the absence of any express showing that will reasonably warrant a belief, on the part of the court applied to, that such new abstract, when produced, will show a result not only different, but the reverse of that appearing on the abstract here in question?

Appellant strenuously contends that the interests he represents are entitled, as a matter of right, to a writ of mandamus requiring that such new abstract be made out by respondents when it is shown that a recanvass of the votes will necessarily produce a certificate differently worded, though the general result may still be the same. In other words, his contention seems to be that the public interest demands that there be produced and placed of record by respondents a certified abstract showing that a certain vote was returned by the precinct election board in a form that can be officially recognized, whether or not the existing political status of Ward county is in any manner affected thereby. If this contention can on principle be sustained, then it may be conceded that appellant is entitled to a writ of mandamus in this case whether or not his moving papers show that the new abstract would present a result the reverse of that shown by the one already prepared.

The reasonable presumption is that, an election being held in Ward county on the day in question, and a proposition in which the people were generally interested legally presented to the electors for determination, votes were cast pro and con thereon in all of the election precincts of the county. We cannot disregard the fact raised by this presumption for no other reason than that no certified statement of the number of votes cast for and against the proposition was made by the precinct election officers. The presumption that a vote in about the amount shown on the abstract was actually cast, though irregularly determined, is certainly stronger than the presumption, which appellant urges, that no vote was cast because there is no return thereof made that can be recognized officially. If respondents were required to reconvene as a county canvassing board in accordance with the prayer of appellant, it would be their legal duty, not only to enter on a new abstract the votes from all precincts of which there was a certified statement, but also to require the presence of the election officers from the precincts in which no such return was made, and to ob-

tain from them a proper certificate on which to act. Revised Codes 1905, section 673. While there is no presumption that such certificate, when so obtained, would show exactly the same results entered by respondents on the abstract prepared by them, there is a presumption that it would show some vote on the proposition; and, in the absence of an express allegation that the number of such votes so shown will produce a different result, it will be presumed that the result shown by the abstract already prepared is substantially correct.

If the result shown is substantially correct, appellant is not entitled to a writ of mandamus merely for the purpose of producing a certificate somewhat different, but not showing a reverse result to the one already made by the county canvassing board. The writ of mandamus is not a mere writ of right. It will not be awarded in all cases, even where a prima facie legal right to relief is shown. It is a high prerogative writ that will, in the exercise of sound judicial discretion and on equitable principles, be issued only when called for by exceptional circumstances, and where, if the extraordinary relief afforded by the writ is refused, a failure or miscarriage of justice will result. High on Extraordinary Remedies, sections 14-15; Tennant v. Crocker, 85 Mich. 328, 48 N. W. 577; State v. U. S. Express Co., 95 Minn. 442, 104 N. W. 556.

Unless a different certificate of the county board of canvassers will show, with reference to the vote upon the proposition to create the new county of Mountraille, a result exactly the contrary of that shown by the abstract prepared, its preparation will vindicate only a mere barren right. The status of the county of Mountraille will be entirely unchanged, and the public interest which appellant represents will be entirely unaffected, beneficially or otherwise. Respondents will be put to great inconvenience ,and the county of Ward to great expense, in order that an experiment may be made for the purpose of testing the absolute technical correctness of the certified abstract prepared by the county board of canvassers. In our view the writ of mandamus should not be awarded for the purpose of compelling an act which, even though legally required, would be fruitless of any remedial or beneficial result. The reconvening of respondents as the county board of canvassers, and the preparation of a new abstract in the absence of a reasonable belief that the result shown by the new abstract would be

the contrary of that previously produced, would be a mere idle ceremony, which, while perhaps interesting to appellant and a few of his fellow citizens, would not serve the public interest to any extent whatever, and certainly not in any   manner adequate to the expense and trouble required to produce it.   Baker v. Board of State Canvassers, 111 Mich. 378, 69 N. W. 656; Rice v. Board of Canvassers, 50 Kan. 149, 32 Pac. 134; State v. Stevens, 23 Kan. 456; State v. Board of County Commissioners, 27 Fla. 438, 8 South. 749; State v. Board of Health, 49 N. J. Law, 349, 8 Atl. 509; People v. Board of Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646; Gilliam v. Green, 122 Ga. 322, 50 S. E. 137; State v. Albin, 44 Mo. 346.

There is, however, as heretofore noted, in appellant's petition for mandamus, an allegation to the effect "that the pretended votes so unlawfully and wrongfully included in said   pretended   abstract of votes are sufficient in number to change the result of said election, and a true, complete and lawful canvass of the votes cast at said election for and against said proposition, will disclose that said proposition was defeated by a large majority, and that said board should so certify."   The trial court found that this allegation, coupled with the other averments and suggestions of the writ, did not amount to an assertion that a majority of the votes actually polled upon the proposition of forming the new   county were opposed to the proposition.   It is evident from the attitude of appellant's counsel before this court, as well as before the district court, that they did not, as we have before pointed out, rely upon such allegation, but, as the trial court states in its memoranda, "took the bold position that it is immaterial what the final result may be; * * * the writ must issue."   Having, however, held that mandamus should not issue unless it clearly appears from the moving papers that there is reasonable cause to expect a different, fruitful and beneficial result, we will assume that the averments of appellant's petition assert such result, and will view the case upon the point of whether or not appellant can now be heard to say that the result of the vote actually cast is the reverse of that shown upon the abstract produced by respondents.   We have already held that appellant, proceeding as he does in the name of the state, and upon a cause of action affecting the citizens of Ward county, is not acting in a private or personal capacity, but stands as a representative of the public interest.   If it were otherwise,

under our holding in Dean v. Dimmick, he would not be permitted, over the objection of respondents, to maintain this proceeding. Standing as he does as representative in a matter of general interest to all of the citizens of Ward county, he is concluded with reference to any state of fact which was or might have been adjudged against that interest in a former action in which the same interest was plaintiff or defendant. "It is elementary that all questions which were, or might have been, litigated in an action or proceeding of which the court has jurisdiction are res adjudicata as to all parties thereto and their privies, and the rule applies to mandamus proceedings." Kaufer v. Ford, 100 Minn. 49, 110 N. W. 364.

It is apparent, therefore, that appellant, acting as he does as a representative of the public interests of the citizens of Ward county, is privy to any other action in which the same interest was brought in question, even though not by name a party thereto. For "in any inquiry with reference to the binding force of a former judgment the term 'parties' includes all who are directly interested in the subject matter, and who have a right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment." Ashton v. City of Rochester, 133 N Y. 187, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619; Robbins v. City of Chicago, 71 U. S. 657, 18 L. Ed. 427. The proceedings entitled "State of North Dakota v. Blaisdell" was an application for certiorari, brought in the name of the state by the attorney general, for the purpose of determining the status of Mountraille county as one of the municipalities of North Dakota. The determination of this status necessarily included an investigation of and finding upon the question of whether or not a majority of the vote upon the proposition to create such county, as shown by the official statement of the county board of canvassers, was in favor of such proposition. Otherwise it would not have been necessary for the Supreme Court to pass upon any other question presented by that proceeding. In the moving papers of that proceeding, as shown by the answer in this case, the attorney general, acting on behalf of the citizens of Ward county, expressly admitted, that, while the proposition or measure for the division and organization of the county of Mountraille "received a large majority of all the votes cast at said general election upon that particular proposition, such proposition did not receive, and was not adopted by a majority of all the legal votes cast in said Ward county at such

election, as contemplated and required by section 168 of the Constitution of the state of North Dakota." The Supreme Court, in passing upon the questions presented by that case, holds that: "None of the propositions received a majority of the votes cast thereon, except the one relating to the creation of the county of Mountraille. This question received 4,207 affirmative votes and 4,024 negative votes. * * * It is apparent from these figures that the proposition to create the new county of Mountraille, while receiving a majority of the votes cast on that proposition, did not receive more than half as many favorable votes as the total vote for governor." State v. Blaisdell, 18 N. D. 31, 119 N. W. 360. The final order of the court in quashing the writ of certiorari and dismissing the proceeding established the status of Mountraille county as an existing entity under all questions that were or might have been there presented.

Appellant urges, however, that he is not bound by any of the facts adjudged in that proceeding, for the reason that he was not a party thereto, and that the record of that proceeding nowhere discloses any connection of his with that case. It is apparent, however, that plaintiff, acting as he does in a representative capacity, is, constructively at least, a party to any action or proceeding in which the same interest was plaintiff. He also claims that it was impossible for the Supreme Court in that proceeding to call in question the legality of the acts of the canvassing board of Ward county. It will be noted, however, that the basis of the proceeding was the certificate of the county auditor of Ward county to the result of the vote upon the proposition to create the county of Mountraille, as shown by the abstract that is brought in question here. If the result so certified was not only incorrect, but the reverse of that warranted by the facts, and the board could be required to prepare an abstract showing the true result, certainly a consideration of that question was obviously of prior importance to that of whether the vote actually shown by the abstract constituted a majority vote such as is contemplated by the constitution. In order that the court might reach and consider the question that was passed upon in the certiorari proceeding, either an admission or judicial determination of the correctness of this result was first necessary; and such admission was made, as we have seen, by the representative of the public right, and acted upon by the court. "A judgment against a county or its legal rep-

resentative, in a matter of general interest to all its citizens, is binding upon the latter, though they are not parties to the suit. * * * Either this must be true, or each citizen, and perhaps each citizen of each generation of citizens, must be at liberty to commence an action and litigate the question for himself, either in his own name or in that of the municipality, or of the people of the state, or in some other mode adapted to the litigation of the question." Freeman on Judgments, section 178. It is held that such perpetual repetition of litigation would be, "in effect, to nullify the judgment, and to ignore the rule that the well-being of society requires that matters once judicially settled should not be relitigated." Locke v. Commonwealth, 113 Ky. 864, 69 S. W. 763. Where one case involving a question of county or state interest has been heard upon the merits and decided, equity requires that the county or state should not be exposed to repeated suits at the instance of parties nominally different although the interest represented is the same, "in order that there may come a time in which litigation of this character shall end." Sabin v. Sherman, 28 Kan. 289.

It is our conclusion, therefore, that the question of the result of the vote cast in Ward county upon the proposition to create the new county of Mountraille is res adjudicata so far as appellant is concerned. Being a citizen and taxpayer of Ward county, he was constructively a party to the certiorari proceeding, and had the right to be heard, and to have any question pertinent to the issues litigated in that proceeding adjudicated. He remained silent while the attorney general, acting as his representative, admitted the correctness of the result shown by the abstract of the board of county canvassers, and only when it has been decided that such result, if correct, establishes the status of Mountraille county as an existing county of North Dakota, does he attempt to bring a proceeding that can be maintained only upon a showing that the result is the reverse of what the representative of the public interest has admitted it to be. This point once litigated, the public interest requires that it should be at rest. Otherwise the political status of the county of Mountraille, as announced in the case of State v. Blaisdell, might be again brought in question by any citizen of the county of Ward; and, as shown from the summary of the entire vote presented in that case, these citizens number between 9,000 and 10,000. To hold that this mass of

people, throughout this and succeeding generations, might maintain separate actions bringing in question the municipal status of Mountraille county would be to declare 'judicial chaos.

We find, therefore, that appellant is concluded, and will not be heard to assert that a recanvass of the votes by the county canvassing board of Ward county would produce a result different from that admitted to be correct in the case of State v. Blaisdell. We further find that, unless a result the reverse of that shown by the first canvass would with reasonable probability be produced by a recanvass, the writ of mandamus will not issue for the purpose of compelling an idle ceremony that can at best produce only a barren and fruitless result.

The order of the district court denying the writ of mandamus is affirmed. All concur.