[L. A. No. 8448. In Bank.—June 30, 1927.]

## CHARLES C. PRICE et al., Appellants, v. SIXTH DISTRICT AGRICULTURAL ASSOCIATION, COUNTY OF LOS ANGELES, CITY OF LOS ANGELES, et al., Respondents.

[1] JUDGMENTS—RES JUDICATA—GENERAL RULE.—A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action.

[2] ID. — CONTRACTS — RECASTING OF—SAME ISSUE—POWER OF CITY OR COUNTY TO CONTRACT.—Where a contract is but a recast of a former contract and the subject matter covered by the two is the same and the issue tendered by both agreements is as to the power of a city or county to contract in the same way respecting identical subject matter, no infirmity in the second contract being asserted that is not applicable, if correct, to the first, and it being necessary in order to overthrow the second contract to overturn *in toto* the first, the causes of action set up in two different suits, one involving the first contract and the other the second, are substantially the same, and the rule of law as to *res adjudicata* is applicable.

[3] ID. — FORMER ADJUDICATION — EFFECT OF — DIFFERENT SUBJECT MATTERS OF ACTIONS.—A former adjudication may be used for two different purposes, namely, either as a complete bar to the relitigation of the same cause of action, or as conclusive evidence of some fact or issue common to different causes of action; and if the existence, validity, or construction of a contract, lease, conveyance, or other obligation has been adjudicated in one action, it is *res adjudicata* when it comes again in issue in another action between the same parties, though the immediate subject matter of the two actions be different.

1. What facts are not *res judicata* though apparently found by the court, note, 96 Am. Dec. 775. See, also, 15 Cal. Jur. 96, 135; 15 R. C. L. 951.

[4] ID.—MATTERS LITIGATED OR WHICH MIGHT HAVE BEEN LITIGATED.—When an issue has been litigated, all inquiry respecting the same is foreclosed, not only as to matters heard, but also as to matters that could have been heard in support of or in opposition thereto.

[5] ID.—ACTION AGAINST PUBLIC BODIES—PARTIES.—In the absence of fraud or collusion, a judgment for or against a municipal corporation, county, town, school, or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens, and taxpayers in respect to matters adjudicated which are of general and public interest, such as questions relating to public property, contracts, or other obligations.

[6] ID. — FORM OF ACTION—MANDAMUS.—A final judgment rendered upon the merits of an application for a peremptory writ of *mandamus* comes within the principle of *res judicata*, and is a bar to another application for the same writ by the same party under the same circumstances, or to another action involving the same issues and in which the same relief is sought.

[7] ID.—GOOD FAITH OF LITIGATION—IMPLIED FINDING AGAINST COLLUSION.—In a proceeding in *mandamus* to compel the mayor of a city and the chairman of the board of supervisors of the county to execute a lease agreement which had been approved by the board of supervisors and the council of the city, where the court found, upon evidence which warranted the finding, that these officers doubted the validity of the contract and the power of the city and county to enter into it, that reputable counsel of high standing representing the interested parties denied the validity of the contract and the power of the city and county to enter into it, that the interests financing the construction of improvements to be made upon the property refused to proceed until the validity of the contract had been determined and the litigation was fought through the district court of appeal and the supreme court of the state, resulting in a judg-

---

4. Applicability of doctrine of *res adjudicata* to issue as to which judgment is silent, note, 6 **Ann. Cas.** 104. See, also, 15 **Cal. Jur.** 142; 15 **R. C. L.** 951, 976.

5. Conclusiveness of on citizens of judgment against municipal corporation, note, 27 **Am. St. Rep.** 195. See, also, 15 **R. C. L.** 1029. Who are bound by a judgment for or against a municipal or other governmental body, note, 105 **Am. St. Rep.** 204. See, also, 15 **Cal. Jur.** 192, 200. Municipal action as bar to action by citizen involving same subject matter, note, 8 **Ann. Cas.** 1134.

6. See 15 **Cal. Jur.** 110.

ment for the defendants, the court's implied finding that collusion in the litigation was absent is supported.

[8] MUNICIPAL CORPORATIONS—CONTRACTS—ACTION BY TAXPAYERS TO CANCEL—LACHES.—An action by citizens and taxpayers of a city and county to enjoin the construction of a public improvement and to cancel a lease relative thereto, which contract was made eight years prior to the commencement of the action, during which time the city and county maintained at considerable expense certain improvements and repaired certain injuries to the property, is barred by laches where the court found that plaintiffs had knowledge of the contract from the time of its execution.

[9] ID.—PARTIES—PLEADINGS.—In such a case, the fact that plaintiffs, who were suing as citizens and taxpayers of a city and county, were also suing in the capacity of members of an agricultural district, should have been pleaded, if true, before it could be relied upon.

---

(1) 34 C. J., p. 750, n. 24, p. 869, n. 56.   (2) 34 C. J., p. 913, n. 44. (3) 34 C. J., p. 914, n. 47, p. 944, n. 83.   (4) 34 C. J., p. 909, n. 31.   (5) 34 C. J., p. 760, n. 11, p. 1028, n. 66.   (6) 34 C. J., p. 881, n. 27.   (7) 1 C. J., p. 974, n. 32; 34 C. J., p. 927, n. 96. (8) 28 Cyc., p. 1745, n. 37 New.   (9) 31 Cyc., p. 680, n. 69.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kiggens & Hoffman for Appellants.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent Sixth District Agricultural Association.

Edward T. Bishop, County Counsel (1924), Everett W. Mattoon, Chief Deputy County Counsel, Albert Leeds, Deputy County Counsel, Everett W. Mattoon, County Counsel, and Pierce Works, Deputy County Counsel, for Respondent County of Los Angeles.

Jess E. Stephens, City Attorney, Lucius P. Green, Assistant City Attorney, Charles McCoy, Deputy City Attorney, and Jerrell Babb, Deputy City Attorney, for Respondent City of Los Angeles.

Flint & MacKay and William A. Bowen for Respondent Community Development Association.

PRESTON, J.—This is an appeal from a judgment of the trial court in favor of defendants in an action brought by plaintiffs as citizens and taxpayers of the city and county of Los Angeles to enjoin the construction of a public improvement known as a stadium, or "Coliseum," in Exposition Park, Los Angeles, and to have canceled and set aside certain lease agreements relative thereto. Sixth District Agricultural Association will be referred to hereinafter as "Sixth District"; Community Development Association as "Association"; City of Los Angeles as "City," and County of Los Angeles as "County."

In the year 1885 the territory known as Exposition Park was conveyed to Sixth District, a public corporation organized under the act of April 15, 1880 (Stats. 1880, p. 62), to be held by it in perpetuity upon the following trusts: " . . . in trust nevertheless for the following uses and purposes, to wit: that is to say that the said lands first hereinbefore described shall be held in perpetuity as a place for holding agricultural exhibitions or fairs, and shall be managed and controlled by the party of the second part for that purpose; and also for the purpose so far as consistent therewith of leasing or otherwise managing the same so as to raise a revenue for meeting the expenses of holding such exhibitions or fairs; and especially so far as consistent with the above purposes, for the purpose of holding exhibitions of horses, cattle and other stock, and of the agricultural, horticultural, viticultural, mechanical manufacturing and domestic products of Agricultural District No. 6, with a view to the improvement of all the industries in the same. . . . "

That portion of the tract lying outside the race-track or speedway is referred to as parcel A; that portion lying within the speedway is referred to as parcel B, and the third portion is designated as the speedway itself.

On February 23, 1910, the City leased a portion of this territory from Sixth District for a term of fifty years. This lease was supplanted by a subsequent agreement, dated May 21, 1912, by the terms of which Sixth District leased to the City parcels A and B for a period of fifty years run-

ning from date of the first lease, February 23, 1910, with a right of renewal on the part of the City for a second fifty years. Certain reservations were made in favor of the lessor. The City agreed to lay out and improve the land as and for a public playground and athletic field, under the direction of the playground commissioners, subject to approval of the lessor. It was also agreed that the premises should at all reasonable times be open to the public as a place for exhibiting agricultural, horticultural, and botanical products and for the recreation and enjoyment of all persons.

On December 31, 1914, the Sixth District leased to the City the third portion of said tract, to wit, the speedway, grandstand, and stables, thus making the City the lessee of practically the entire territory known as Exposition Park.

On June 21, 1920, a lease agreement was drawn up and approved by Sixth District, whereby the City agreed to lease parcel B to Community Development Association, a "nonprofit co-operative corporation duly organized and existing under and by virtue of the laws of the state of California, with the power and for the purpose of holding and maintaining industrial exhibitions, agricultural fairs, street pageants, athletic exhibitions and other performances designed to foster, promote and promulgate the industries and industrial welfare of the people of the state of California, and to lease and rent lands and construct buildings thereon for any or all of said purposes, and to lease out such buildings when constructed." By the proposed convention, the "principal consideration" passing from the Association to the City was the erection and construction of a certain stadium; the lease was to terminate February 23, 1960, but the interest of the Association after ten years was to be merely nominal; upon construction the stadium was to be leased to the City and County at certain stated periods, subject to certain reservations in favor of Sixth District, and in consideration of such lease of the structure, the City and County each agreed to pay rentals to the Association as follows: $50,000 within six months after commencement of construction; $62,000 within thirty days after its completion; $68,000 one year after date of the last preceding payment; $65,000 two years after that date; $62,000 three years after that date; $59,000 four years after that date; $56,000 five years after that date, and $53,000 six years after that date, or the total sum of $475,000

from each of said bodies politic, a total of $950,000 from the two together.

It further provided that at the expiration of ten years the Association should vacate the demised premises and deliver possession to the City and County.

This proposed agreement was approved and accepted by the board of supervisors of the County and the council of the City, but Jonathan S. Dodge, as chairman of said board, and Meredith P. Snyder, as mayor of the City, each refused to execute the instrument. *Mandamus* proceedings were instituted against each of these officials; the two cases were tried together and a decision was handed down upholding the validity of the stadium lease agreement and ordering its execution by the respective officers on behalf of said City and County, whereupon said instrument was duly executed. (*County of Los Angeles* v. *Dodge* and *City of Los Angeles* v. *Snyder*, 51 Cal. App. 492 [197 Pac. 403]—petition for hearing in this court denied, April 23, 1921.)

Subsequent to the above decision, however, said lease agreement was redrafted and a new instrument, dated November 15, 1921, was duly executed to replace the former agreement of June 21, 1920. But three slight changes were made, however, altering description of the property and amounts of rental payments and adding a clause releasing officers and members of the Association from personal liability. It is upon said agreement of November 15, 1921, attempting to ignore the prior contract of June 21, 1920, that this action is based. At the time of the trial the stadium was far on the road to completion and the race-track had been repaired and substantially restored to its former good condition.

The court in this behalf, on undisputed evidence, found as follows: "That thereafter, said lease agreement was amended by changing the date thereof, by changing the sums of money to be paid thereunder by the defendants, the county and the city, to the defendant Community Development Association, by changing the description of the property referred to in said lease agreement, and by adding the provisions set forth in lines 20 to 31, page 25 of plaintiffs' complaint, by reference to the personal liability of the officers and members of the Community Development Association.

"That said lease agreement as amended was in substance the same as the lease agreement set forth in said petitions, and contained in substance the same terms, conditions and provisions, and described in substance the same property. That so amended said lease agreement was duly re-executed by the respective parties thereto, and is the agreement referred to in paragraph XIII in said complaint on file herein.

"That said lease agreement as amended was approved by the City Council of the city of Los Angeles, and by the Board of Supervisors of the county of Los Angeles, and the mayor of said city was by said City Council and the chairman of said board was by said Board of Supervisors duly ordered to execute said lease agreement as so amended, and the same was duly executed in accordance with said authority.

"That there was made or could properly have been made in said proceedings had before said District Court of Appeal each and every contention or claim made in the above entitled action, that the said lease agreement referred to in paragraph XIII of said complaint is illegal or that any or all of the terms and conditions thereof is or are unlawful or unenforceable, or that it is unlawful or wrongful to construct the stadium referred to in said lease agreement, or that it is illegal or wrongful for the county of Los Angeles and the city of Los Angeles to pay to the Community Development Association any or all of the moneys agreed in said lease agreement to be so paid by the county of Los Angeles and the city of Los Angeles.

"That plaintiffs in the present case were represented by the respective parties in those certain actions entitled *City of Los Angeles* vs. *Meredith P. Snyder* and *County of Los Angeles* vs. *Jonathan S. Dodge,* filed in the District Court of Appeal of the state of California, Second Appellate Division, No. 2, on the 21st day of June, 1920.

"That in and by the pleadings of the respective parties in said cases, all of the questions and issues, both of fact and of law, which are now presented to this court for determination, were or could have been in said cases presented to said District Court of Appeal, and the judgments of said court in said cases rendered on the 23d day of February, 1921, are binding and conclusive upon the parties hereto."

[1] Respondents assert that the foregoing findings show that the cause of action in the former suit and in the present suit are identical and that under section 1910 of the Code of Civil Procedure the parties are likewise identical; and that such facts compel the application of the rule announced in 23 Cyc. 1215, as follows: "A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action."

This rule is similarly stated in 34 Corpus Juris, section 1162, page 750, where it is said: "A judgment rendered by a court of competent jurisdiction on the merits is a bar to any future suit between the same parties or their privies, upon the same cause of action, in the same or another court, so long as it remains unreversed and not in any way vacated or annulled."

It is stated in 15 Ruling Case Law, section 429, pages 950, 951, as follows: "Briefly stated, this doctrine is that an existing final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit."

In sections 1908 and 1909 of the Code of Civil Procedure this rule has likewise been announced. It has also been adhered to in scores of cases in this court which need not here be cited. Appellants, admitting the general rule, however, seek to avoid the effect thereof by asserting that the causes of action are not the same; that the contract of June 21, 1920, made the subject of judgment by the district court of appeal on February 23, 1921, is not the basis of the cause of action here involved predicated upon the contract of November 15, 1921. [2] But it is undisputed that the latter contract is but a recast of the former and that the

subject matter covered by the two contracts is the same. The issue tendered by both agreements is as to the power of the city or county to contract in the same way respecting identical subject matter. In that sense the causes of action are identical. Appellants make no attack upon the contract of November 15, 1921, because of the amendments thereto. They assert no infirmity in the latter contract that is not likewise applicable, if correct, to the former. In order to overthrow the latter contract, it is necessary to overturn *in toto* the former. Indeed, it is axiomatic that if the former contract is legal and valid, the latter is valid also. We have no hesitancy, therefore, in concluding that the causes of action are substantially the same and that the rule of law above announced is applicable, provided always that the parties are identical.

[3] Moreover, it is immaterial under the peculiar facts of this case whether the causes of action be the same or not. Appellants in this connection cite Freeman on Judgments, fifth edition, pages 1416, 1417, as follows: " . . . a former adjudication may be used for two different purposes, namely, either as a complete bar to the relitigation of the same cause of action, or as conclusive evidence of some fact or issue common to different causes of action." (See, also, *Horton* v. *Goodenough,* 184 Cal. 451, 461 [194 Pac. 34].) But the fact is that the issue determined by the former suit is the only issue presented by the present suit. Quoting again from Freeman on Judgments, fifth edition, section 672, page 1418: "If the existence, validity or construction of a contract, lease, conveyance or other obligation has been adjudicated in one action it is *res judicata* when it comes again in issue in another action between the same parties, though the immediate subject matter of the two actions be different." The principle above announced has been sustained in numerous cases before this court, some of which are the following: *Koehler* v. *Holt Mfg. Co.,* 146 Cal. 335, 337 [80 Pac. 73]; *Borland* v. *Borland,* 56 Cal. App. 638 [206 Pac. 478] (rehearing denied by supreme court). Federal cases: *Southern Pacific* v. *United States,* 168 U. S. 1 [42 L. Ed. 335, 337, 18 Sup. Ct. Rep. 18]; *Bissell* v. *Spring Valley Township,* 124 U. S. 225 [31 L. Ed. 411, 413, 8 Sup. Ct. Rep. 495]; *Mason Lumber Co.* v. *Buchtel,* 101 U. S. 638 [25 L. Ed. 1072]; *Fitch* v. *Stanton Township,* 190 Fed. 310.

These cases are, of course, to be distinguished from a case where a cause of action arises out of the same subject matter, but upon a new set of facts not obtaining at the time of the former judgment. This principle is illustrated by the case of *Silva* v. *Reclamation Dist. No. 1001*, 41 Cal. App. 326, 329 [182 Pac. 786]. (See, also, *Jones* v. *Petaluma*, 36 Cal. 230; *Shanklin* v. *Gray*, 111 Cal. 88 [43 Pac. 399]; *People* v. *Rodgers*, 118 Cal. 393 [46 Pac. 740, 50 Pac. 668].)

[4] Appellants, however, apparently have a misconception of this rule. They seem to contend that an issue heard and determined in a former case is binding only as to such grounds supporting or opposing said issue as were actually urged and litigated. But an issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result. In other words, when an issue has been litigated all inquiry respecting the same is foreclosed, not only as to matters heard but also as to matters that could have been heard in support of or in opposition thereto. This rule has been aptly stated as follows: ''It is important to note in this connection, however, that even tho the causes of action be different, if the second action involves a right, title or issue as to which the judgment in the first action is a conclusive adjudication, the estoppel so far as that right, title or issue is concerned must likewise extend to every matter which was or might have been urged to sustain or defeat the determination actually made.'' (Freeman on Judgments, 5th ed., sec. 677, p. 1432.) To the same effect see *Sullivan* v. *Triunfo Gold etc. Min. Co.*, 39 Cal. 459. Numerous California cases may be found where this rule has been applied.

This principle also operates to demand of a defendant that all his defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them. The rule has been stated as follows: ''The defendant in an action is ordinarily required to set up all his defenses which do not constitute separate causes of action, and if he neglects to do so is concluded by the judgment rendered in such action. The judgment operates as *res judicata*, not only in regard to the existence of the plaintiff's cause of action, but as to

the nonexistence of the defense which was not pleaded.    The reason for this rule lies in the principle that there must be an end to litigation, and, where a party has an opportunity to present his defense and neglects to do so, the demands of the law require that he should take the consequences."    (15 Ruling Case Law, sec. 446, pp. 969, 970.)

This principle is illustrated in our California decisions by such cases as *Bingham* v. *Kearney,* 136 Cal. 175, 177 [68 Pac. 597], where it is said: "It is not the policy of the law to allow a new and different suit between the same parties, concerning the same subject matter, that has already been litigated; neither will the law allow the parties to trifle with the courts by piecemeal litigation.    When plaintiff was brought into court by defendant in the former case, she certainly knew her rights.    If she wished to rescind the contract, or if she had rescinded it, as she said in her answer she had done, then and there was the time to present her pleadings and evidence and insist upon all rights to which she was entitled under the law.    If she could not get the award of the law upon the facts in the lower court, she could have appealed.    She did not do so.    She is now met by the presumption that all the facts and matters in controversy were disposed of in the former suit, and the further presumption that the judgment in the former suit is correct.    If she failed to assert her claim properly, or to present the proper evidence in the first suit, she will not now be permitted in a second to litigate it.    The principles herein stated are elementary.    They are stated in the late case of *Quirk* v. *Rooney,* 130 Cal. 510 [62 Pac. 825]."

In said case of *Quirk* v. *Rooney,* 130 Cal. 505, 510 [62 Pac. 825], it was said: "The facts stated are substantially the same, and the object sought precisely the same.    The court below evidently thought that the letter of May 1, 1892, was sufficient to establish and charge appellant as trustee of the lands for the plaintiff as one of the heirs of Bryan Lynch.    If so, it is unfortunate for plaintiff that the letter was not introduced in evidence in the former suit; but the plaintiff had her day in court, her case was tried upon the evidence she then had, and a final judgment reached.    If a new action could be commenced and a case retried because of the discovery of new facts, after the case had been finally

disposed of, there would be no end of litigation, and a case could be kept in court forever."

Practically the whole contention of appellants may be summed up in this: They contend that the causes of action are different, and because of such fact they may litigate the entire subject matter of the contract on November 15, 1921, without regard to the fact that the objects sought are precisely the same as those sought by the defendants in the former actions, to wit, to have it declared that the City or County may not contract in the manner proposed respecting the construction of a public improvement such as a stadium; and furthermore, they assert that if the above stated position be not sound, nevertheless, they should be allowed to urge any point going to the validity of the contracts of 1920 and 1921, which was not specifically urged as a defense to said former suits. The rules of law and the authorities above set forth conclusively show appellants to be mistaken as to both these propositions. We therefore conclude without hesitation that if the parties be assumed to be identical, every issue raised by the pleadings in the present cause has been conclusively adjudicated against the contention of appellants and they and each of them are bound by such adjudication. And this is true in the case whether or not the causes of action are in fact the same.

[5] This brings us to the question as to whether or not the parties are the same. The fact that there are defendants and respondents other than the City and County does not prevent the application of the rule that the parties are deemed to be the same. (Code Civ. Proc., sec. 1910; *Suisun L. Co.* v. *Fairfield School Dist.*, 19 Cal. App. 587, 594 [127 Pac. 349].) "In the absence of fraud or collusion, a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens, and taxpayers in respect to matters adjudicated which are of general and public interest, such as questions relating to public property, contracts, or other obligations." (34 Cor. Jur., sec. 1459, p. 1028. See, also, 23 Cyc., p. 1269.) The principle above announced is of universal application, and appellants occupy no different position than other taxpayers of the City or County, and in the absence of fraud or col-

lusion there appears no valid reason for denying application of the rule to them.

Appellants make the point that inasmuch as the former suits were in reality County of Los Angeles *v.* Chairman of the Board of Supervisors and City of Los Angeles *v.* Mayor, the rule should not apply. If, however, fraud and collusion be absent, the public interest may be as well represented by the mayor or chairman of the board of supervisors as by any set of taxpayers. For example, the fact that a man has been elected mayor of the city is no reason to suspect that he will not properly represent the public interest, and when such officer defends an action relating to a public contract, no reason can be found why he may not be a suitable, if not the most suitable, representative of the public interest in the matter. This very question was raised in *State ex rel. Davis* v. *Willis,* 19 N. D. 209 [124 N. W. 706]. There the estoppel by judgment was made to rest upon the case of *State ex rel. McCue* v. *Blaisdell,* 18 N. D. 31 [119 N. W. 360], which was a suit by the attorney-general applying for a writ of *certiorari* against the Secretary of State and in this connection the court, in disposing of the contention that the taxpayer was not a party to the suit, said: "Appellant urges, however, that he is not bound by any of the facts adjudged in that proceeding, for the reason that he was not a party thereto, and that the record of that proceeding nowhere discloses any connection of his with that case. It is apparent, however, that plaintiff, acting as he does in a representative capacity, is, constructively at least, a party to any action or proceeding in which the same interest was plaintiff. . . . Standing as he does as representative in a matter of general interest to all of the citizens of Ward County, he is concluded with reference to any state of fact which was or might have been adjudged against that interest in a former action in which the same interest was plaintiff or defendant."

See, also, *Floersheim* v. *Board of Commrs.,* 28 N. M. 330 [212 Pac. 451], where the court said: "Where a suit is brought to determine a public right, involving a matter of general interest, as, for example, the suit of Martinez as a resident and taxpayer in behalf of himself and all others similarly situated, to enjoin the issuance of courthouse and jail bonds by Harding County, all citizens and taxpayers of

the county are parties to the proceeding by representation, and are bound by the judgment, not only as to matters which were litigated, but also as to matters which existed at the time and which could have been litigated in the case, the same as the actual formal parties on the record, regardless of whether they had actual notice of the pendency of the suit or not (citing many cases)." (See, also, *Pear* v. *East St. Louis,* 273 Ill. 501 [113 N. E. 60].)

[6]   This doctrine is not impaired because the former suits were judgments in *mandamus* proceedings so long as the judgments were on the merits. "It is well settled that a final judgment rendered upon the merits of an application for a peremptory writ of *mandamus* comes within the principle of *res judicata,* and is a bar to another application for the same writ by the same party under the same circumstances, or to another action involving the same issues and in which the same relief is sought." (34 Cor. Jur., p. 760, sec. 1173. See *Visher* v. *Smith,* 92 Cal. 60 [28 Pac. 94]; *Santa Cruz Gap Turnp. Joint Stock Co.* v. *Santa Clara County,* 62 Cal. 40; *Cohn* v. *Isensee,* 45 Cal. App. 509 [188 Pac. 278]; *Sauls* v. *Freeman,* 24 Fla. 209 [12 Am. St. Rep. 190, 4 South. 525]; *Ashton* v. *Rochester,* 133 N. Y. 187 [28 Am. St. Rep. 619, 30 N. E. 965, 31 N. E. 334]; *Montgomery* v. *Walker,* 154 Ala. 243 [129 Am. St. Rep. 54, 45 South. 586]; *Shanahan* v. *South Omaha,* 2 Neb. (Unof.) 466 [89 N. W. 285].) In *Sauls* v. *Freeman, supra,* the court said: "If the judgment in *mandamus* was not as effectual, upon the principle of *res adjudicata,* against the inhabitants of the county as it is against the county commissioners, there would be no end to litigation in such cases, or in any cases against county officials as such." This doctrine is likewise recognized by California in the case of *Suisun L. Co.* v. *Fairfield School Dist., supra.* The cases relied upon by appellants such as *Price* v. *Gwin,* 144 Ind. 105 [43 N. E. 5], *People ex rel. Graff* v. *Chicago, B. & Q. R. Co.,* 247 Ill. 340 [93 N. E. 422], and *Northern Pac. R. Co.* v. *Snohomish County,* 101 Wash. 686 [172 Pac. 878], are cases where either this question is not discussed, or where the taxpayer had a special interest in the litigation or where the party did not represent the public interest. In other words, in all said cases where the question was discussed, special circumstances were present making inapplicable the rule above announced, but

in no case cited is the existence of the rule denied. In the case of *In re Central Irr. Dist.*, 117 Cal. 382 [49 Pac. 354], the statement made is *obiter* and moreover the doctrine of the law of the case is there confused with the doctrine of estoppel by judgment. Furthermore, that case is not followed in any of the later cases on this subject.

[7] Appellants, in an apologetic manner, also raise the question of collusion between the parties to the aforesaid *mandamus* proceedings. The court impliedly found against this contention and, we think, properly so. It may well have been that the mayor of the City and the chairman of the board of supervisors would have liked to see this public improvement carried out; nevertheless, it is a fact found by the court and warranted by the evidence that these officers doubted the validity of the contract and the power of the City and County to enter into it. It is also true that reputable counsel of high standing representing the interested parties denied the validity of the contract and the power of the City and County to enter into it and the interests financing the construction of the improvement refused to proceed until validity had been determined. The litigation was thereupon fought in good faith with fairness and earnestness not only through the district court of appeal, but through to the supreme court of the state, and upon such a showing the conclusion must be that the court's implied finding that collusion was absent is supported. In *Floersheim* v. *Board of Commrs.*, *supra*, speaking of this contention, the court said: "It will be seen from an examination of the allegations of the reply, heretofore quoted, that the substance and effect of the allegations is that the suit was a friendly suit, and the plaintiff was, in fact, desirous that the validity of the bonds should be established. If a real controversy existed, as it evidently did in this case, as to the validity of these bonds, the action of a qualified person in behalf of himself and others represented by him is not condemned by the law merely because the suit is a friendly suit, but, on the other hand, the law commends such action. (1 C. J., p. 974; *Parker* v. *State*, 132 Ind. 419 [31 N. E. 1114]; *State* v. *Dolley*, 82 Kan. 533 [108 Pac. 846]; *Ex parte Steele* (D. C.), 162 Fed. 694; *Adams* v. *Union R. R. Co.*, 21 R. I. 140 [42 Atl. 515, 44 L. R. A. 273].) The personal desires of the parties as to the result of the litigation

are of no moment, provided no fraud or collusion is resorted to.''

We therefore conclude that not only was the cause of action in the prior litigation the same as in the present, but that the parties were likewise the same and that the judgments entered in said former proceedings are conclusive upon appellants here as to the validity of the contract of November 15, 1921.

Further attacks are made directly against the agreements known as the lease of May 21, 1912, and the lease of December 31, 1914. The lease of May 21, 1912, was made an exhibit to the former proceedings. Indeed, it furnished the very basis upon which the contracts of 1920 and 1921 were executed. The validity of this lease was necessarily involved in said prior actions and, therefore, what was adjudicated therein with respect to said contracts is equally applicable to this lease. The contract of December 31, 1914, was given by Sixth District to the City and comprised, as above noted, the so-called speedway, stables, grandstand, and other equipment connected with the race-track on said property. The City agreed to maintain the property in first-class condition at its own expense and to use it to the fullest extent ''in encouraging horse raising, training, speeding exhibits and contests.'' [8] This contract, as shown by its date, was made eight years prior to the commencement of the present action and it is conceded by appellants that the City and County have been maintaining at considerable expense the speedway, grandstand, and barns thereon, and the court found that all injury done to said speedway by the construction of said stadium has been substantially repaired and the race-track restored to practically its original condition. Under such facts a court of equity should not hesitate to declare the existence of laches on the part of appellants, whom the court also found to have had knowledge of said contract of lease from the time of its execution. The court concluded that appellants were guilty of laches and denied equitable relief to them. We think the court was amply authorized by the evidence in the case in so holding.

[9] Appellants' theory that they are suing also in the capacity of members of Sixth District is likewise without support in the pleadings or evidence. This fact must be

pleaded, if true, before it can be relied upon. (*Pennie* v. *Hildreth,* 81 Cal. 127, 132 [22 Pac. 398].)

Judgment affirmed.

Curtis, J., Langdon, J., Waste, C. J., Shenk, J., and Seawell, J., concurred.