Isabelle M. **HART**, Plaintiff,

v.

The **TRAVELERS INDEMNITY COMPANY**, Defendant and Third-Party Plaintiff,

v.

Edward J. **HART**, State Farm Mutual Automobile Insurance Company, Spray, Gould & Bowers, Bruce Allen Ray and Butler & Hegner, Third-Party Defendants.

No. 48–61.

United States District Court
S. D. California,
Central Division.

Oct. 17, 1962.

James G. Butler, Compton, Cal., for plaintiff and for third-party defendants Edward J. Hart and Butler & Hegner.

Schell & Delamer, Los Angeles, Cal., for defendant and third-party plaintiff.

Belcher, Henzie & Fargo, Los Angeles, Cal., for third-party defendant Spray, Gould & Bowers.

Crider, Tilson & Ruppé, Los Angeles, Cal., for third-party defendant State Farm Mut. Automobile Ins. Co.

Thorpe, Sullivan, Clinnin & Workman, Los Angeles, Cal., for third-party defendant Bruce Allen Ray.

WESTOVER, District Judge.

J. A. Risse and Marie D. Risse were the owners of a certain Oldsmobile automobile, on which they carried public liability insurance with State Farm Mutual Automobile Insurance Company [hereinafter designated as State Farm], the limit (individual) of which was $25,000.00.

James N. Ray was the owner of a certain Kaiser automobile, on which he carried public liability insurance the limit of which was $100,000.00. His insurance carrier was The Travelers Indemnity Company [hereinafter called Travelers].

Mr. and Mrs. J. A. Risse were the parents of Thomas A. Risse, fifteen years old, who resided with them. On May 11, 1959, Mr. and Mrs. Risse arranged to go to a hospital to visit a relative, but their son, stating that he had homework to do, decided not to go with them. Sometime prior to leaving for the hospital, Mrs. Risse drove the Oldsmobile automobile into the garage and left the car key in the lock. When she and her husband left for the hospital (in another car owned by them) the key was still in the lock of the Oldsmobile, and the garage door was closed but not locked.

Thomas Risse, their son, previously had decided to take the Oldsmobile automobile out that evening during his parents' absence; and after they left home Thomas opened the garage door, started the automobile, drove it around the corner from his home and parked it on the street. He then called his friend, Ray Sanders, who lived across the street and had Ray come to the Risse home on the pretext that the two boys were going to study. When Ray arrived at the Risse home, he and Thomas proceeded around the corner to the parked Oldsmobile, got into the car, and Thomas drove it to the home of Bruce Allen Ray, the son of James N. Ray; each of these three boys —Thomas, Ray and Bruce—was fifteen

years of age, and none had a driver's license or learner's permit of any kind.

Thomas A. Risse knew how to drive an automobile. Sometime prior to the occurrence out of which this action arose, his father, J. A. Risse, had taken Thomas to the nearby parking lot of the Hollywood Park Race Track and had demonstrated to him how an automobile was to be operated and allowed Thomas to drive the car on the parking lot. Also, Thomas had previously taken another automobile owned by his parents and had driven the car without their knowledge.

On the night in question the three boys took turns driving the Oldsmobile, and Thomas Risse turned the car over to his friend, Bruce Allen Ray. Bruce decided to see how fast the car would go and drove it at an excessive rate of speed up a dead-end street. When he could not stop the Oldsmobile, it ran into a home occupied by Mr. and Mrs. Hart; and as a result Mrs. Hart suffered severe injury.

Sometime later Mr. and Mrs. Hart commenced an action in the Superior Court of the State of California, in and for the County of Los Angeles, against Bruce Allen Ray, the driver of the automobile which caused the injury, Joe Risse, and other fictitious defendants.

When the Summons and Complaint were served upon Bruce Allen Ray, he turned them over to his father who, in turn, delivered them to Travelers, requesting the company to defend the action. And when the Summons and Complaint were served upon Joe Risse, he delivered them to State Farm, requesting that company to defend the action.

Each insurance company, upon receipt of Summons and Complaint, made independent investigation of the accident, and each arrived at the conclusion that at the time of the accident the car was not being operated with the permission of its owner. But State Farm, realizing, there might be some liability, even though its investigation indicated the car was not operated with the permission or consent of the owner, filed, through its counsel, Spray, Gould & Bowers, an Answer on behalf of its insured. The Complaint alleged specifically that at the time of the accident the Oldsmobile automobile was being driven with the permission of the owner. Joe Risse's Answer denied the allegation of permission.

Pretrial was had, and the case was set to be tried on August 30, 1960. Notice of trial was duly given to all defendants.

Prior to the trial attorneys representing Mr. and Mrs. Hart indicated to State Farm that the Harts would settle their claim against Joe Risse for the sum of $2,500.

On August 30, 1960, James G. Butler, Esquire, representing plaintiffs, and Bruce Allen Ray, by his guardian ad litem, James N. Ray, in propria persona, appeared in court. However, neither Spray, Gould & Bowers (attorneys for Joe Risse) nor Joe Risse, nor his son Thomas A. Risse, was present in court. Mr. Butler thereupon telephoned to the office of Spray, Gould & Bowers, stating that it was necessary for someone to be in court to consummate the agreement previously made relative to settlement of the claim against Joe Risse.

The attorney of the firm of Spray, Gould & Bowers who had handled the case and who had originally discussed settlement was absent from the office when Mr. Butler telephoned. Daniel O. Howard, Esquire (who had no knowledge of the case) was given the file and instructed to proceed to court to enter into a stipulation in favor of the Harts and against the defendant, Joe Risse, in the sum of $2500. (In the action now at bar, Mr. Howard testified that he had not looked at the file, either before proceeding to court nor at the time of trial, and that he had no personal knowledge of any of the agreements made between the representatives of his firm and Mr. Butler.) Prior to appearing before the Judge on August 30, 1960, Mr. Butler obtained an agreement from Mr. Howard that a stipulation would be entered into that the Oldsmobile automobile was be-

ing driven with the permission of its owner; and on the August 30th appearance before the Court, Mr. Butler stated to the Judge:

"* * * This is a stipulation as to judgment against Joe Risse alone, as the owner of the automobile.

* * * * * *

"We stipulate to take a judgment against him in the amount of $2500 and to allow the Court to make a finding of fact with respect to paragraph III of the Complaint that Bruce Allen Ray was driving the described motor vehicle, in the complaint, with the consent and permission and knowledge of the defendant Joe Risse."

Mr. Butler announced to the Court that the matter would be heard as a default against defendant, Ray; and inasmuch as the doctor who was to testify concerning Mrs. Hart's injury would not be available until the following day, the case was continued until August 31, 1960.

On August 31 Mr. Butler stated to the Court:

"Your Honor, we call to your attention that on yesterday we entered into a stipulated judgment against the owner of the car, Joe Risse, for $2500 with the further stipulation that the car at the time of the accident was being driven with the consent of Joe Risse."

At the time this statement was made to the Court, Bruce Allen Ray and his guardian ad litem, James N. Ray, were present in court and made no objection to the stipulation. Thereupon, Mr. Butler called Dr. Stacy Putnam to the stand to establish the injury sustained by Mrs. Hart as a result of the accident.

Mr. Butler also called Bruce Allen Ray to the stand (as a witness on behalf of plaintiff under § 2055 of the Code of Civil Procedure), who testified the Oldsmobile automobile was being driven at the time of the accident with the consent and permission of Joe Risse.

Thereafter, the Court made findings of fact and conclusions of law, finding that at the time of the injury the Oldsmobile automobile was being driven with the consent, permission and knowledge of Joe Risse and awarding damages in the stipulated sum of $2500 against Bruce Allen Ray and Joe Risse, and $57,500 against Bruce Allen Ray. Copies of the findings of fact, conclusions of law, and judgment were duly sent to Spray, Gould & Bowers, counsel for Joe Risse and State Farm, and to Bruce Allen Ray, through his guardian ad litem, James N. Ray, in propria persona.

Subsequently the judgment of $2500 was paid by State Farm to Mr. Butler, who in turn executed a Satisfaction of Judgment which was forwarded to Spray, Gould & Bowers. No attempt was made by anyone to set aside, modify or change the judgment entered in the Superior Court.

Thereafter, Mr. Butler notified Travelers that he had a judgment in favor of the Harts against Bruce Allen Ray in the sum of $57,500 and demanded payment. When payment was refused a Complaint was filed in the Superior Court of the State of California, in and for the County of Los Angeles, against Travelers, which action was transferred to this court on the ground of diversity.

After the action was removed to this court, defendant Travelers filed an Answer to the Complaint and a Third Party Complaint, naming as Third Party Defendants State Farm, Spray, Gould & Bowers; Bruce Allen Ray and Butler & Hegner. The Answer denied that at the time of the accident the Oldsmobile automobile was being driven by Bruce Allen Ray with the permission and consent of its owner.

The Third Party Complaint alleged, in part, that plaintiff and Third Party Defendants, with the exception of Bruce Allen Ray, entered into the stipulation relative to permissive use of the Oldsmobile automobile in an attempt to shift the responsibility for any judgment from State Farm to Travelers and that such conduct was a fraud upon Travelers. It was further alleged the State Farm policy afforded coverage to Bruce Allen

Ray, and inasmuch as State Farm did not defend Bruce Allen Ray the failure to defend made State Farm liable for the entire judgment against Ray.

The insurance policy issued by Travelers to James N. Ray provided in part that it would pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damage * * arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile." The policy also provided the company would defend any suit alleging bodily injury or property damage and seeking damages payable under the terms of the policy "even if any of the allegations of the suit are groundless, false or fraudulent."

Perusal of the insurance policy indicates the company had two duties: (1) To pay any sums which the insured would be legally obligated to pay; and (2) To defend, even though the allegations of the Complaint were groundless, false or fraudulent.

There is no question that Travelers failed to fulfill its responsibility to provide a defense to its insured. The Complaint served upon Bruce Allen Ray was given to Travelers with a request to defend. It alleged specifically that the Oldsmobile was being driven with the consent and permission of its owner. The insurance company made investigation and came to a contrary conclusion; and although its contract of insurance called for a defense "even if any of the allegations of the suit are groundless, false or fraudulent", Travelers refused to defend.

Travelers alleges there was no obligation either to pay or defend, unless the use of the automobile was with the permission of the owner.

## FRAUD

One of the issues raised by the pleadings in the case at bar is that of fraud—alleged to have occurred at the time the stipulation was entered on August 30, 1960—between counsel for the Harts and counsel for Joe Risse.

■ Under California law a final judgment may be attacked upon the ground of fraud. In Pico v. Cohn, 91 Cal. 129, at page 133, 25 P. 970, at page 971, 27 P. 537, 13 L.R.A. 336, the Court said:

"* * * That a former judgment or decree may be set aside and annulled for some frauds there can be no question, but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. And we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or, where an attorney fraudulently pretends to represent a party, and connives at his defeat or, being regularly employed, corruptly sells out his client's interest. * * *"

■ There is no evidence in the case at bar that any of the above acts occurred at the time the stipulation re permission to drive was entered into. It may be that the stipulation was executed through carelessness or inadvertence, but this Court is at a loss to find any evi-

dence which would support a finding of extrinsic fraud to void the judgment.

In a recent case, Preston v. Wyoming Pac. Oil Co., 197 Cal.App.2d 517, at page 528, 17 Cal.Rptr. 443, at page 449, the Court had to determine the question of fraud and (citing Westphal v. Westphal, 20 Cal.2d 393, 126 P.2d 105) said:

" * * * 'The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic. [Citations].

" 'Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court. [Citations]. If an unsuccessful party to an action has been kept in ignorance thereof [citations] or has been prevented from fully participating therein [citations] * * *, the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. [Citations]. Fraud perpetrated under such circumstances is intrinsic, even though the unsuccessful party does not avail himself of his opportunity to appear before the court. Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for appeal or other direct attack. * * * ' "

In the case at bar there is no question that defendant Travelers had opportunity to appear and defend its insured. Having failed to comply with the terms of the insurance contract to defend and having failed to participate in any manner in the proceedings thereunder, it now has little ground to complain that the judgment was obtained because of fraud.

## DUTY TO DEFEND

 It is Travelers' contention that inasmuch as Bruce Allen Ray was afforded coverage under State Farm's policy, it was the duty of State Farm to appear and defend not only for its assured, Joseph A. Risse, but also Travelers' assured, James N. Ray. [Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883].

When Travelers refused to defend it wrote a letter to its insured in which it stated, in part:

"If you feel that your son should be protected by the insurance covering Joseph Risse, which it is our understanding is written through State Farm Mutual Insurance Company, it would be my suggestion that you tender the Summons and Complaint to them for whatever action they might wish to take in this matter."

When the summons and complaint were turned back to James N. Ray by Travelers he appeared in the Superior Court action in propria persona as guardian ad litem for his son, Bruce Allen Ray, a minor. No demand was made upon State Farm for a defense on his behalf. If James N. Ray had contended that his son was covered by the policy of State Farm and a demand had been made upon State Farm for a defense, an entirely different problem would be presented. But no demand was made upon State Farm, and it would be inequitable to hold that State Farm is responsible for a defense in the absence of demand therefor. Restatement of the Law of Contracts, § 264; Mullally v. Townsend, 119 Cal. 47, 50 P. 1066; Vickrey v. Maier, 164 Cal. 384, 129 P. 273.

## RES JUDICATA

Travelers further contends it is not bound by the finding of permission, because such finding was not necessary in the action which had been filed by the Harts against Bruce Allen Ray, Joe Risse, et al. It contends the only issue to be decided in the Superior Court case

was liability and that the question of coverage was entirely foreign to the issues of that case.

Travelers is evidently taking the position that in an action alleging an automobile was being driven with the owner's consent or permission, the insurance carrier may sit idly by, await the outcome of a trial and, if the result is a judgment unfavorable to the defendant, thereafter resist payment of the judgment on the ground it was not necessary in the first action to make a finding that the automobile was being driven with the consent and permission of the owner. In other words, defendant Travelers wishes to establish a rule of two trials in situations like this one—first, a trial as to liability and, second, a trial as to coverage.

■ The great number of personal injury actions is one of the factors contributing to court congestion. To afford two trials materially increases the burden. There should be one trial in which all issues are determined, and the parties should be limited to the judgment at the one trial.

This issue was passed upon by the California Supreme Court in Price v. Sixth District Agricultural Ass'n, 201 Cal. 502, 258 P. 387. At page 511, 258 P. at page 390, the Court said:

"Appellants, however, apparently have a misconception of this rule. They seem to contend that an issue heard and determined in a former case is binding only as to such grounds supporting or opposing said issue as were actually urged and litigated. But an issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result. In other words, when an issue has been litigated all inquiry respecting the same is foreclosed, not only as to matters heard but also as to matters that could

have been heard in support of or in opposition thereto. * * *

"This principle also operates to demand of a defendant that all his defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them. The rule has been stated as follows: " 'The defendant in an action is ordinarily required to set up all his defenses which do not constitute separate causes of action, and if he neglects to do so it is concluded by the judgment rendered in such action. The judgment operates as res judicata, not only in regard to the existence of the plaintiff's cause of action, but as to the nonexistence of the defense which was not pleaded. The reason for this rule lies in the principle that there must be an end to litigation, and, where a party has an opportunity to present his defense and neglects to do so, the demands of the law require that he should take the consequences.' "

The action filed by the Harts in the Superior Court alleged specifically that the Oldsmobile automobile was driven by Bruce Allen Ray, with the permission and consent of its owner, Joe Risse. When the Summons and Complaint were presented to defendant Travelers it recognized immediately that the key issue to be determined was whether the automobile was in fact being driven with the permission and consent of its owner. The company made its own, independent investigation of the facts and came to the conclusion the automobile was not being so driven. Travelers knew that permission was a paramount issue in the case when it refused to defend its insured. Travelers was familiar with the automobile financial responsibility law of the State of California and the requirements thereunder.

In Boufils v. Pacific Auto. Ins. Co., 165 Cal.App.2d 152, at page 156, 331 P.2d 766, at page 768, the Court says:

"The Automobile Financial Responsibility Law of California is set

forth in Sections 410 through 423.1 of the Vehicle Code, the provisions of which are 'directly intended for the benefit of drivers and owners of motor vehicles as a means of forestalling suspension of the license of the driver and of the registration of the vehicle or vehicles, and, more fundamentally, designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' * * * This law declared the public policy of this state in the premises; * * *."

The Court continues, at page 158, 331 P. 2d at page 769:

" * * * The insurance provisions of the Automobile Financial Responsibility Law were intended for the benefit not only of the drivers and owners of motor vehicles, but also for persons injured as a result of their negligence * * *."

Travelers contends the issue to be determined in the Superior Court was that of liability of Joe Risse and Bruce Allen Ray and that the issue of coverage by an insurance carrier was outside the issues before the court. But it must be remembered that Bruce Allen Ray was a minor—fifteen years of age—and plaintiffs' attorney understood that a judgment obtained against the minor alone would probably be futile; if recovery was to be had at all, it had to be obtained from an insurance carrier; that the only way in which the insurance company could be held liable would be to allege in the Complaint, and prove at the trial, that the automobile was being driven with the consent and permission of the owner. So far as recovery was concerned, permissive use of the automobile was the key issue of that action.

It is difficult for this Court to bring itself to a conclusion that at the time of trial, when evidence was being adduced, it would not have been possible to introduce evidence that the automobile was being driven with the consent and permission of the owner to establish the insurance carrier's liability, if an insurance carrier existed. Instead of being an immaterial allegation outside the issues of the trial, the allegation of permission and consent was, in this Court's opinion, a material issue to be determined by the Superior Court. It may well be that the evidence presented to the Superior Court was not overwhelming relative to the question of permission; but some evidence on the issue was presented, and the Court made a finding thereon.

When the action at bar came on for trial a jury was impanelled to determine the issue whether the Oldsmobile was being driven with permission of its owner. At the time the jury was impanelled and during the course of trial, this Court stated it was reserving to itself the decision whether the judgment in the State Court action, based upon a specific finding that the automobile was being driven with the consent of its owner, was res judicata. The impanelling of the jury and the taking of its verdict were based upon the premise that this Court would make a determination of the question of res judicata before determining the force of the jury's verdict.

The jury returned a verdict in which it found the Oldsmobile was not being driven with the owner's permission. No judgment was entered upon the verdict, awaiting the Court's determination of the issue of res judicata.

██ The Federal Court cannot be used to review and examine the Superior Court's action to determine whether the evidence would support the findings. So far as this Court is concerned, the findings and judgment of the Superior Court are final and binding.

## PRIMARY COVERAGE—EXCESS COVERAGE

█ As heretofore set forth, a judgment was obtained in the Superior Court action against Joe Risse and Bruce Allen Ray for $2500 and against Bruce Allen

Ray in the sum of $57,500; that thereafter a Satisfaction of Judgment for $2500 was executed and filed, thereby relieving Joe Risse and his insurance carrier, State Farm, from all further liability in the action.

State Farm knew or should have known that its policy provided primary coverage and that Travelers' policy provided only excess insurance, over and above the State Farm policy. The insurance policy issued by Travelers specifically provided that in the event liability arose out of use of a non-owned automobile, its liability should be considered excess insurance.

The Supreme Court of the State of California, in American Automobile Ins. Co. v. Republic Indemnity Co., 52 Cal.2d 507, 341 P.2d 675, discussing dual insurance when an injury occurs through a person not operating his own motor vehicle, specifically held that the insurance of the car owner is primary and must bear the entire loss to the extent of the limits of the policy.

There is no argument that at the time settlement was made and at the time the Satisfaction of Judgment was executed and delivered State Farm could have responded to the extent of its coverage. Can the primary carrier, by entering into an agreement such as that in the Superior Court action, transfer its liability to the excess carrier? Mr. and Mrs. Hart were represented by competent counsel. They knew or should have known that the Travelers policy represented excess insurance and there was no liability upon Travelers until exhaustion of the State Farm insurance. Having such knowledge and having released State Farm from all liability in excess of $2500, can they now insist that Travelers pay to them the difference between the $2500 received from the primary carrier and the $25,000 limit of the State Farm policy?

It would seem exceedingly inequitable to permit the parties to shift the burden from the primary insurer to the excess carrier. When Mr. and Mrs. Hart agreed to accept the $2500 in full settlement of their claim against State Farm they, through their counsel, should have understood they were also releasing Travelers from the liability of paying the difference between the $2500 and the $25,000 policy limit of State Farm.

From the foregoing, the Court will make the following findings:

1. That Travelers owed to Bruce Allen Ray a defense, standing as it did in privity with his father, James N. Ray.

2. That Travelers was requested to defend Bruce Allen Ray and refused so to do.

3. That Bruce Allen Ray, a minor, appeared through his guardian ad litem in propria persona and participated in the stipulation relative to the question of permission, filed in the Superior Court action.

4. That the issue of permission was raised in the pleadings of the Superior Court case and submitted to the Judge for decision.

5. That the finding of permission made by the Superior Court was a necessary and proper finding, and that defendant Travelers is bound thereby; and that finding is res judicata.

6. That no extrinsic fraud occurred on August 30 or August 31, 1960.

7. That the judgment of the Superior Court of the State of California, in and for the County of Los Angeles, is a valid, final and binding judgment.

8. That the Satisfaction of Judgment of $2,500.00, given to State Farm, relieves Travelers from the payment of the first $25,000.00 of the judgment.

9. That judgment will be rendered herein in favor of plaintiff and against Travelers for the sum of $32,500.00, with interest thereon from the date of entry of the Superior Court judgment.

Plaintiff will prepare findings of fact, conclusions of law and judgment in conformity with the foregoing, to be filed with the court on or before November 1, 1962.